MANLY F. CANNON, plaintiff in error, *v.* MATTHEW P. KINNEY, defendant in error.

| 4 | 9 |
|---|---|
| 33a | 472 |
| 4 | 9 |
| 44a | 609 |

*Error to Sangamon.*

To maintain the action of trespass to personal property, the plaintiff must, at the time the injury is committed, have the actual or constructive possession, and also a general or qualified property therein, which may be either first, as the absolute or general owner, having the right to immediate possession; secondly, as the qualified owner, coupled with an interest, and also entitled to immediate possession; thirdly, as bailee with a mere naked authority, unaccompanied with any interest, except as recompense for trouble, &c., but who is in actual possession; or, fourthly, actual possession, though without the consent of the real owner, and even adverse. The absolute ownership or general property in a chattel, *prima facie*, for all civil purposes, draws to it the possession.

Where a horse was gratuitously loaned to A to ride to B, and A, after having accomplished his journey, put the horse into the hands of C, who put him into the hands of D, who turned the horse out on the prairie to feed with his own horses, and E, a stranger, took the horse and carried him away: *Held*, that A could maintain trespass against him.

The rule seems to be well settled, that where the legal possession of personal property, which is an incident to a general or absolute ownership, is in one who has not the actual keeping of the goods, he may bring an action of trespass for an injury to the same.

The constructive possession of an owner, is sufficient to entitle him to maintain trespass for taking personal property out of the hands of a person to whom it is lent.

THIS cause was tried in the Sangamon Circuit Court, before the Hon. Samuel H. Treat and a jury, at the July term, 1839.

A. LINCOLN, for the plaintiff in error, relied upon the following points and authorities:

I. If the plaintiff showed himself to be the general owner of the horse, and also entitled to the immediate possession of him, at the time the defendant seized him, he showed a constructive possession, which is sufficient. 1 Chit. Plead. 153.

1. The general owner of personal property may maintain trespass against a third person who takes such property from the bailee, by gratuitous loan, of such general owner. *Ibid.* 154; 3 Johns. Dig. 575.

2. The general owner of personal property, who deposits such property with a bailee, and such bailee places the property in the hands of a third person for safekeeping, may maintain trespass against a stranger who takes such property from such safekeeper. 6 Bac. Abr. 577; 1 Chit. Plead. 153, note 2; 1 Pick. 232.

*Note.*—Property in the hands of a naked bailee, is not changed by the gift and delivery of the same, by such bailee, to a third person. 6 Bac. Abr., title Trespass, E 577; 6 Bac. Abr., title Trover, C 684.

In this case the keeper had no lien upon the horse for the keeping,—

1st, Because there was a special undertaking to pay;

2d, Because the facts of the case do not raise a lien under the law. Montagu on Lien, 29, and note (f); Esp. N. P. 584.

If there were a lien in favor of Harris, Kinney could not avail himself of it in defence. 3 Stark. Ev. 1504, note 2; 2 N. H. Rep. 319; 5 T. R. 606; 7 East 5, 6, 7.

The doctrine of possession, in the actions of trespass and trover, is precisely the same, except as to time. In trespass it must be at the time of the taking. 1 Chit. Plead. 153. In trover it must be at the time of the conversion. Chit. Plead. 138.

S. T. LOGAN, for the defendant in error.

BREESE, Justice, delivered the opinion of the Court:

Cannon brought his action of *trespass*, in the Circuit Court of Sangamon county, against Kinney, for seizing a horse and converting the same to his own use. The defendant pleaded not guilty. On the trial of the cause, the absolute property in the horse in question was proved to be in the plaintiff, at a time when he gratuitously loaned him to one John Harris, to be rode by him from the Lead Mines to Sangamon county; that said John Harris did ride him to Sangamon county, and then put him into the hands of his brother James, for feeding and safe keeping through the winter, without informing him to whom he belonged, but undertaking to pay for his feed and keeping; that James, horse feed becoming scarce, put him into the hands of another brother, Robert Harris, to be by him fed and safely kept through the remainder of the winter; that Robbert, after feeding and keeping him, until grass came, turned him on the prairie with his own horses, occasionally salting him, and all the while supposing him to belong to John Harris; that while he was thus running in the prairie, the defendant took and carried him away, Robert Harris telling him at the time, that he understood the plaintiff claimed the horse.

It was further proved, that when taken he was worth sixty-five dollars. This was all the evidence offered on the part of the plaintiff, when he closed his case.

The defendant then moved the Court to instruct the jury, as in case of nonsuit, on the ground that there was no evidence that the defendant took the horse from the possession of the plaintiff, which motion the Court sustained; to which the plaintiff excepted; and judgment being entered against him for the costs, he has brought his case here by writ of error, and assigns for error this direction of the Court.

To maintain the action of trespass to personal property, the plaintiff must, at the time the injury is committed, have the actual or constructive possession, and also a general or qualified property therein, which may be either, first, as in the case of the absolute or general owner, having the right to immediate possession; secondly, the qualified owner, coupled with an interest, and also entitled to imme-

diate possession; thirdly, a bailee with a mere naked authority, unaccompanied with any interest, except as to recompense for trouble, &c., but who is in actual possession; or, fourthly, actual possession, though without the consent of the real owner, and even adverse. (1)

This case seems to fall within the first class above enumerated, the plaintiff being proved to have been, at the time of the gratuitous loan, to John Harris, the absolute owner of the property. Being so, this absolute ownership or general property in the chattel, *prima facie*, for all civil purposes, draws to it the possession.

The bailment to John Harris was for a specified purpose, to ride to Sangamon county, and when that was accomplished, the bailment was put an end to, and the plaintiff's right to immediate possession of the property revived.

Placing the horse in the hands of James, and then of Robert Harris, did not change or in any manner off-set the plaintiff's right to the possession of the chattel. He could, upon a demand made upon James or Robert Harris, to deliver up the property to him, and a refusal by either of them, maintain his action of trover, their taking being lawful. As against a mere stranger, such as the defendant is shown to be in this case, who came into possession tortiously, he can maintain trespass. No person stood between the plaintiff and defendant, entitled to any rights to the possession of the horse, as against the plaintiff. He had a right, after the horse was ridden to Sangamon county, to reduce him into actual possession, and such right is sufficient to entitle a party to the action of trespass. (2)

If property is loaned to another for an indefinite term, the one who owns it can maintain trespass against him who takes it tortiously; (3) and the constructive possession of an owner is sufficient to entitle him to maintain trespass for taking the property out of the hands of a person to whom it is lent. (4)

The rule seems to be well settled, that where the legal possession, which is an incident to a general or absolute ownership, is in one who has not the actual keeping of the goods, he may bring this action. (5)

We are are of opinion that the facts in this case abundantly show a sufficient possession on the part of the plaintiff, to entitle him to this action against the defendant, a mere wrong-doer and a stranger.

The judgment of the Circuit Court directing the nonsuit is accordingly reversed with costs, the cause remanded to the Circuit Court of Sangamon county, with directions to award a *venire de novo.*

*Judgment reversed.*

(1) 1 Chit. Plead. 152–3.  (2) 1 Wend. 466.
(3) 9 Cowen 687.  (4) 10 Wend. 110; 1 D. and E. 480.
(5) 1 Pick. 232; Bac. Abr., title Trespass, letter E.