[L. A. No. 9070. In Bank.—August 2, 1926.]

CALIFORNIA FIRE PROOF STORAGE COMPANY (a Corporation), Petitioner, v. HARLEY W. BRUNDIGE et al., as Members of the Railroad Commission, etc., Respondents.

[1] PUBLIC UTILITIES—TELEPHONE COMPANIES — DIRECTORIES.—A telephone directory is an essential instrumentality in connection with the peculiar service which a telephone company offers for the public benefit and convenience.

[2] ID.—RAILROAD COMMISSION—JURISDICTION.—The Railroad Commission has jurisdiction to regulate the form, content and cost to subscribers of directories used by a telephone company, which is a public service corporation.

---

(1) 37 **Cyc.**, p. 1630, n. 75 New.   (2) 37 **Cyc.**, p. 1610, n. 51, p. 1629, n. 61, 63, p. 1630, n. 75 New.

APPLICATION for a Writ of Mandate to compel the Railroad Commission to assume jurisdiction of a complaint against a telephone company. Writ granted.

The facts are stated in the opinion of the court.

H. S. Clewett for Petitioner.

Carl I. Wheat, Arthur T. George, Reginald L. Vaughan for Respondents.

Lawler & Degnan, Alfred Sutro and Norbert Korte, *Amici Curiae.*

THE COURT.—This is an application for a writ of mandate to compel the Railroad Commission to assume

jurisdiction of a complaint against the Southern California Telephone Company, filed by petitioner herein.

The complaint lodged with the commission showed substantially the following facts: Petitioner is a private corporation which is and for several years has been doing business in the city of Los Angeles. The Southern California Telephone Company is a "telephone corporation," within the definition thereof given in the Public Utilities Act, and is a "public utility," within the terms of said act. (Stats. 1919, pp. 491, 493.) The telephone company operates a telephone line in the city of Los Angeles, and in connection with its telephone business in that city, and to facilitate telephonic communication by such of the public as wish to use its telephones, it annually issues to and distributes among its subscribers telephone directories. In these directories are listed the names and telephone numbers of its subscribers. For some years past the telephone company has permitted a large number of persons who are among the number of its subscribers, including the petitioner here, to insert advertising matter in the classified business section of the directories issued by it. It has based its charges for this advertising upon a schedule of rates and charges which were established by it for the purpose. For a number of years past it has printed in heavy, black, bold-faced type the names of such of its telephone subscribers as would pay a fixed and established charge for the privilege of having their names so printed. Petitioner is one of those whose names were thus printed. Prior to 1925 the telephone company's charge to all such advertisers for inserting advertising matter in the classified business section of its directories was fifty dollars a month for each half page of advertising, and for printing the name of subscribers in heavy, black, bold-faced type one dollar per month for each name printed in this distinctive manner. In each of several years prior to 1925 petitioner and the telephone company entered into a contract under which the telephone company undertook to and did insert in the classified business section of its directories five half-pages of advertising matter for petitioner, and also caused petitioner's name to be printed in bold-faced, black type in the place where it occurs in the listed names of the telephone subscribers; and petitioner agreed to and did pay for this

advertising at the above-mentioned rates. When preparing to print and issue the directories for 1925, the telephone company notified petitioner that it intended raising the rates theretofore fixed by it for the advertising which it previously had done for petitioner, and informed the latter that the rates which it previously had charged for such advertising as petitioner had caused to be inserted in the classified business section of the directories would be increased from the former rate of fifty dollars per month to the rate of one hundred dollars per month for each half-page, and that the rates for printing all subscribers' names in bold-faced, black type would be increased from one to five dollars per month. Other advertisers were given the privilege of advertising in the classified business section of the new directories at the old rate of fifty dollars per month. The increased rates were established by the telephone company without the order or authorization of the Railroad Commission.

In the complaint which petitioner filed with the respondent commission that body was asked to assume jurisdiction over the matters set forth in its said complaint and conduct a hearing thereon and grant to the petitioner such relief as the facts developed upon such hearing required and as were just and equitable in the premises. The commission declined to entertain the complaint upon the ground that the law had not vested it with jurisdiction so to do. Hence this proceeding.

It is claimed by petitioner that a telephone directory is a constituent part of the company's "telephone line," within the definition of that term as given in subdivision (s) of section 2 of the Public Utilities Act, and that, therefore, the additional charges are void because the increases were not authorized by the Railroad Commission. It likewise is claimed that the increase in the rate charged petitioner for advertising in the classified business section of the directories as compared with the rates charged other like advertisers constitutes an unlawful discrimination and therefore void.

The single question presented in this proceeding is as to whether the Railroad Commission has and should assume jurisdiction over the telephone directories of the Southern California Telephone Company, a public service corporation,

and over the matter of the form and content of such directories; and over the matter of the charges and receipts of said corporation connected with and accruing from the publication, distribution and use of such directories. [1] A telephone directory is an essential instrumentality in connection with the peculiar service which a telephone company offers for the public benefit and convenience. It is as much so as is the telephone receiver itself, which would be practically useless for the receipt and transmission of messages without the accompaniment of such directories. [2] The form which such directories conveniently took with the inception of this modern method of message transmission was that of an alphabetical list of the names of the subscribers to the service, and there can be no question as to the right of the regulatory body over this form of public utility to regulate the form, content and cost thereof to subscribers who had entitled themselves to the convenient use of such service. If, for example, the corporation should undertake to put forth a directory which was not alphabetically arranged, the Railroad Commission would doubtless have the right to prescribe such arrangement; or, if the corporation should essay to issue its directory with the names therein printed in a type too small or too dim for comfortable use, or should attempt to issue its directory in an inconvenient or perishable form, the regulatory body doubtless would have power to order remedied these defects in this instrumentality; and if it should become manifest that the public convenience would be the better subserved by the provision therein of a classified list of subscribers, we do not doubt the power of the regulatory body to require that the telephone companies include such a classification in their directories as are at present provided in the form of a gratuity. In the development of this form of public service telephone companies have found it practicable and profitable to diminish the cost and increase the profits of operation by making use of its directories as a means and form of advertising available to its subscribers. The activities of these companies in this direction have taken on two forms: First, that of the insertion of advertising matter in connection with its classified list; second, in the printing in the alphabetical list of its subscribers the names of those who are willing to pay for such preference in bold-faced type, or, in other words, in a

better and clearer type than that employed in printing the names of subscribers not paying extra for such preferment. Granting the right of these public service corporations to employ this instrumentality for such profitable purposes, we cannot do other than regard its use for such purposes as a mere incident in the operation of its public service over which the regulating body ought to have full control. We think this is made manifest by a consideration of that one of the above-mentioned forms of advertising which these corporations indulge in, viz., the printing for a consideration of the names of certain of its subscribers in black-faced type. We can well conceive that if the telephone company is to be free of control to select such of its subscribers as it may choose to assess or to favor in this regard, it would be in a position to so juggle with this particular form of advertising as to give a minimum of efficiency to those who did not so advertise or whom it did not, for any reason, see fit to favor in the foregoing regard; or to discriminate in other respects among its customers, and thus subject this particular instrumentality of its service to serious inequalities and abuses. With respect to the insertion of display advertisements in its directories, while the opportunity for abuse may not be so manifest, the petitioner herein sets forth facts which show that this telephone company is engaged in the exercise of a discrimination as between this petitioner and others of its subscribers in the direction of, doubling the rates formerly charged the petitioner for such advertising, while permitting other subscribers to have like space at the former rates. The employment of this instrumentality of its public serivce as a means for making such discriminations among its subscribers ought not to be tolerated and can only be permitted upon the theory that the telephone company, in making use of its directory for advertising purposes, is engaged in a strictly private enterprise and hence in that respect is not subject to public regulation and control. We cannot subscribe to this theory for the foregoing reasons, but there are also other reasons why we think we ought not to do so. The telephone service in its relation to the public, and in its general and practical operation, is, or at least tends to be, a natural monopoly; and this being so it is, in an especial sense, the proper subject of public regulation and control. If in the employ-

ment of one of its essential instrumentalities it undertakes to so manipulate its form and use as to make a considerable profit out of that portion of the public which it is thus enabled to serve, we are of the opinion that such profit should be taken account of by the regulating body as are the other earnings of this public utility in determining what just and reasonable rates should be allowed and paid by the public for the service it provides.

In reaching the foregoing conclusions we have given due consideration to the briefs of the respondent and *amici curiae* and to the authorities therein referred to. We are cited to no case which immediately touches the question before us, nor do we think that the cases to which counsel refer have application to the situation presented in the instant case. In deciding to issue the writ herein we do not undertake to determine the scope of the inquiry of the Railroad Commission, but only that it should entertain the complaint of the petitioner with a view to an investigation of the subject over which we think it has full jurisdiction and control.

Let the writ issue requiring the Railroad Commission to take and exercise jurisdiction over the subject matter of the petitioner's complaint.

Rehearing denied.