Hugh Rager, Trading as First United Broadcasters, Appellee, v. Western Union Telegraph Company, Appellant.

Gen. No. 41,950.

Opinion filed March 18, 1942.

WEST & ECKHART, of Chicago, and FRANCIS R. STARK, General Solicitor, for appellant; PAUL HASSELL and OWEN A. WEST, both of Chicago, of counsel.

BENJAMIN F. MORRISON, of Chicago, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

This was an action by plaintiff for damages alleged to have resulted from defendant's failure to deliver a telegram canceling a contract. Defendant denied receipt of the message and denied that damages resulted from failure to deliver. Judgment was entered for plaintiff in the sum of $390 and costs. No point is raised with respect to the pleadings.

Plaintiff's theory is that defendant is liable to plaintiff for failure to deliver a telegram to WLW, Cincinnati, a broadcasting station, canceling a contract with a radio station representative.. Defendant's theory of the case is that the rights and duties of the parties are controlled by the company's rules, regulations, classifications and tariffs published and filed in accordance with the acts passed pursuant to the commerce clause of the United States Constitution, article 1, section 8, subsection (3), particularly the Interstate Commerce Commission Act of June 18, 1910, 36 Stat. at

L. 539, and the Communications Act of 1934, 48 Stat. at L. 1064, and the acts supplemental thereto and in amendment thereof; that provision 5 of the aforesaid tariff rules and regulations provides in substance that when a messenger boy picks up a message, he acts, for that purpose, as the agent of the sender; that the message is, therefore, not received by the Telegraph Company until it reaches one of its transmitting offices; and that, since, in the case at bar, the message was delivered to the messenger boy and was not received at one of the company's transmitting offices, it was never received by the Telegraph Company; and that plaintiff is bound by this tariff provision because his message was an interstate message. It is further suggested that provision 6 of the aforesaid tariff rules and regulations provides that the company shall not be liable for damages in cases in which the claim therefor is not presented in writing within 60 days after the message in question is filed with the company for transmission; and that in the instant case, plaintiff did not file his claim in writing within said 60-day period, and is bound by said tariff provision because his message was an interstate message.

It is further suggested by defendant that plaintiff did not have a contract with WLW, the addressee of the message, his contract being with the TransAmerican Broadcasting and Television Corporation; that the telegram requesting cancellation to WLW, even had it resulted in canceling the broadcast by WLW, would not relieve plaintiff of his liability under his contract with the TransAmerican Broadcasting and Television Corporation; that it was necessary in plaintiff's case to prove WLW would have accepted the cancellation, as per request of telegram, it being under no contract with plaintiff and plaintiff's contract with TransAmerican Broadcasting and Television Corporation containing no provision for a cancellation; and that

it was, also, essential for plaintiff to prove that Trans-American Broadcasting and Television Corporation would have concurred in WLW's cancellation.

Plaintiff suggests that defendant's statement of the plaintiff's and defendant's theories of the case are inaccurate. It is suggested that defendant's statement that "plaintiff's theory of the case is that defendant is liable to plaintiff for failure to deliver a telegram to WLW, a broadcasting station, canceling a contract with a radio station representative" is not an accurate statement; but that plaintiff's contention is that the defendant is liable to plaintiff for failure to transmit or deliver a telegram canceling a contract with a broadcasting station, WLW; that the contract was with the station and was made for and on behalf of the station by the station representative, TransAmerican Broadcasting and Television Company; and that the defendant neither transmitted nor delivered the telegram to station WLW. Plaintiff also points to defendant's statement that plaintiff did not file his claim in writing within "said 60 day period" and says that this is not correct, as the evidence and exhibits introduced show that a claim in writing was given to the defendant within the 60 days after the message was given to defendant for transmission and delivery. However, plaintiff does not and did not (by giving such alleged written notice of claim) recognize any responsibility on him to conform to provision 6 of the company's rules, regulations, classifications and tariffs.

Plaintiff suggests that the facts of the case are inaccurately stated, and in his restatement of the facts says that on December 25, 1939, Matilda Marx, secretary for plaintiff, pushed the buzzer connected with the office of the Telegraph Company and shortly thereafter a Western Union messenger responded at plaintiff's office and the message on which suit was instituted was given to the messenger. The message canceled a contract with Radio Station WLW for

broadcasting time. On Saturday, December 29, 1939, plaintiff received information that WLW had not received his telegram and was still broadcasting the program. Plaintiff thereupon immediately canceled the program but was compelled to pay for 4 days' additional broadcasting. Plaintiff also telephoned the local office of the Telegraph Company and was informed that they had not received his telegram.

On January 8, 1940, plaintiff wrote a letter to the Telegraph Company informing them that the failure of the company to transmit his telegram was causing him considerable financial loss and that the Western Union Company should make an investigation with a view toward making an adjustment. The Telegraph Company answered this letter by mail on February 14, 1940, saying they would continue to investigate the matter. On March 2, 1940, plaintiff again wrote the Telegraph Company informing them that he had had to pay for the four days' additional broadcasting and he expected the company to reimburse him for the loss he had sustained. The Telegraph Company thereupon disclaimed responsibility.

The defendant suggests that the tariff provisions under which messages are accepted by the company are binding upon the plaintiff, and urges that the tariff provision that "no responsibility attaches to the Company concerning messages until the same are accepted at one of its transmitting offices, and, if a message is sent to such office by one of the Company's messengers, that he acts for that purpose as the agent of the sender," is valid and binding upon plaintiff. The defendant cites *Wernick v. Western Union Telegraph Co.*, 290 Ill. App. 569, where this court held that the Telegraph Company, in its interstate business, was subject to the regulations of the Federal Communications Commission, which, through rules, classifications and tariffs published and filed with the commission by the Telegraph Company fixed the liability of

the carrier and superseded what had previously been a matter of common-law liability. The court in its opinion said:

"It is apparent that the telegraph company prepared its new rules and tariffs many years ago in accordance with an order of the Interstate Commerce Commission. In the case of *Cultra v. Western Union Telegraph Co.*, 61 I. C. C. 541, where, pursuant to an investigation, it was held that the existing rules and rates of the telegraph company limiting its liability for negligence were unreasonable, and new rules and rates were prescribed and discussed by the commission." The decision of the court in the *Wernick* case was approved by the United States Supreme Court in *Western Union Telegraph Co. v. Nester*, 309 U. S. 582, 60 Sup. Ct. 769. That the Telegraph Company in its interstate business is subject to its rates, rules and regulations being prescribed by the Federal Communications Commission seems to be no longer open to controversy. This provision is a part of the company's published tariff regulations. The plaintiff is attempting to aviod the effect of these rules and regulations by claiming not to have seen or read the conditions to be found on the reverse side of the telegram blank or in the tariff book. This is immaterial, and the plaintiff is bound by them.

The U. S. Supreme Court, in *Western Union Telegraph Co. v. Esteve Bros. & Co.*, 256 U. S. 566, which case was cited by this court in the *Wernick* decision, stated: "Uniformity demanded that the rate represent the whole duty and the whole liability of the company. It could not be varied by agreement; still less could it be varied by lack of agreement. The rate became, not, as before, a matter of contract, by which a legal liability could be modified, but a matter of law by which a uniform liability was imposed. Assent to the terms of the rate was rendered immaterial, because, when the rate is used, dissent is without effect."

In answer plaintiff denies that the tariff provision that "no responsibility attaches to the company con-

cerning messages until the same are accepted at one of its transmitting offices, and if a message is sent to such office by one of the company messengers that he acts for that purpose as the agent of the sender'' is binding on the sender where the messenger boy was dispatched to the sender by the telegraph company for the purpose of securing a message for transmission by the company. In support of his contention plaintiff cites *Walton v. Western Union,* 189 Ill. App. 606, where the court said:

"We may concede that there are, many reasons why the Company, sending messenger boys at call for compensation flowing to the Company should not be held under some varying circumstances liable for the loss resulting from the boys absconding with valuable packages entrusted to them. It is not necessary to decide any such question here. This package was one quite in the line of the business which the messenger boys are held out by the Company to do. It was written document and not differing in essence from a letter or a written message.

"As for the point that the boy was agent only of the sender, it is sufficient to say that the Company gets the compensation which the sender pays. It seems to us that common sense and right reason demand that in this case the Company should be held liable to repair the damage caused by the carelessness and incompetency of the boy they sent on hire to perform the service." The further case of *Baker v. Western Union Telegraph Co.,* 221 Mo. App. 616, is cited, where the court said:

"The company thus constitutes the messenger its own agent and is liable for his failure to deliver the message at the company's office."

The plaintiff states the rule of law applicable herein to be that "The parties' rights and duties are controlled by the common law relating to the law of negligence and agency upon which the state courts' pronouncement is final." The suggestion is offered

by defendant, with some force, that this is not the law where the message sued upon in *interstate,* but would only be so if the message in question had been an *intrastate* message. State courts in intrastate message cases, may or may not uphold the tariff provisions according to its idea of public policy. It appears from the brief of defendant that the case of *Postal Telegraph Cable Co. v. Warren-Goodwin Lumber Co.,* 251 U. S. 27, was the first of a long line of decisions in which the United States Supreme Court has specifically held that the State courts' pronouncements are not final in interstate message cases, but that the "act (of 1910) was an exertion by Congress of its authority to bring under federal control the interstate business of telegraph companies, and, therefore, was an occupation of the field by Congress which excluded state action." The authorities called to our attention by the plaintiff are cases which from an examination appear to have involved intrastate messages, and, therefore, would not be applicable in a case such as the instant one involving an interstate message. The authority submitted by defendant on this question (the *Western Union Telegraph Co. v. Esteve Bros. & Co.* case, *supra*) appears to be the first decision of the United States Supreme Court regarding the effect of the Western Union Telegraph Company's rules, regulations, classifications and tariffs and the relation of the same to the Telegraph Company and its patrons, as a matter of law rather than as a matter of contract, and held the stipulations to be binding although the message was not written on a blank containing the stipulations. The rule set forth in that case has since been upheld in numerous other cases by the United States Supreme Court and supported by the case of *Wernick v. Western Union Telegraph Co.,* 290 Ill. App. 569, to which we have already referred.

There is still one subject to be passed upon and that

is the clause appearing on the reverse side of defendant's message blank in these words:

"The Company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing to the company within sixty days after the message is filed with the company for transmission." Upon the facts as appear in this record as we have heretofore set out in part, plaintiff states that his letter of January 8th—which read ". . . we believe that an investigation on your part is essential to an adjustment."—is sufficient to constitute a claim. Defendant suggests, however, that this letter merely calls for an investigation. It appears from the authority, 62 C. J. 187, that:

"The authorities seem to agree that the claim must identify the message, state the negligence complained of and the nature and extent of the damages sustained; and that it is insufficient if it merely gives notice of the negligence complained of or if it simply complains thereof and demands an explanation." Plaintiff's letter of January 8th does not purport to be a claim, but only a request for an investigation on the part of the company. His letter of March 2nd, which date is more than 60 days from the date of the alleged non-delivery of the telegram, states "We are accordingly filing claim with you." The provision for the filing of claim is valid, binding and effective on plaintiff and he was obliged to comply with it. Having failed to file his written claim within 60 days, he cannot now recover. Those who do business with the Telegraph Company are as much bound by the rules and regulations approved by the commission as the Telegraph Company is to change its rules and regulations by order of said commission.

For the reasons stated in this opinion, it is our conclusion that the court erred in entering a judgment on the findings for the plaintiff for $390 and costs.

598

The judgment is, therefore, reversed, and judgment here for defendant and costs.

*Judgment reversed and judgment here for defendant and costs.*

BURKE, P. J., and KILEY, J., concur.