Illinois Bell Telephone Co., Appellant, v. Willard F. Miner, d/b/a Willard Miner Company, and Leslie G. Heyden, d/b/a Woodstock Plastics Company, Appellee.

Gen. No. 10,932.

Second District.

July 23, 1956.

Released for publication August 8, 1956.

Fuqua & Fuqua, of Waukegan, and Sidley, Austin, Burgess & Smith, of Chicago, for appellant; Ellis E. Fuqua, of Waukegan, Kenneth F. Burgess, James E.

S. Baker, H. Blair White, and George W. McBurney, all of Chicago, of counsel.

Johnson & Wiles, of Chicago, for appellees; Walter E. Wiles, and Herman Barrington, both of Chicago, of counsel.

JUSTICE CROW delivered the opinion of the court.

The plaintiffs, Illinois Bell Telephone Company, and Armen Nazareth Babagian, doing business as Nazareth Rug Cleaners, on October 6, 1955, filed a verified complaint in the Circuit Court of Lake county seeking an injunction against the defendants, Willard F. Miner, doing business as Willard Miner Company, and Leslie G. Heyden, doing business as the Woodstock Plastics Company, to enjoin them from manufacturing and distributing plastic covers to telephone subscribers to be placed on telephone directories.

The Court, upon motion of the plaintiff company, certain affidavits being also filed contemporaneously with the complaint, issued at the outset a temporary injunction restraining the defendants from further manufacturing or distributing the covers to the telephone company's subscribers. The defendants thereafter filed motions to dismiss the complaint and to quash the temporary injunction. The Court, after hearing arguments, entered an order dismissing the complaint for failure to state a cause of action for an injunction and for being without equity, and dissolving the temporary injunction, and the telephone company has perfected an appeal from that order. The other plaintiff, Armen Babagian, has not joined in the appeal.

The reasons urged by the defendants in their motions as to why the complaint was defective and the temporary injunction should be dissolved, are:

1. The complaint fails to set forth a cause of action in that the Illinois Bell Telephone Company is not the

owner of the directories involved and the company does not exercise absolute domain over them.

2. Paragraph 4 of the complaint sets forth certain rules and regulations of the telephone company which pertain only to the apparatus and equipment used in the actual transmission of telephone service (and not to telephone directories) and, in addition, sets forth an adequate remedy against violators.

3. Paragraph 5 of the complaint sets forth the regulations with reference to directories and there is no reference therein to any use or application of said directories for or to advertising or to covers.

4. The defendants have no contract or other dealings with the plaintiffs and are engaged in a lawful business which the plaintiffs are attempting to injure and have injured and damaged by this proceeding.

5. There is no showing in the complaint of any irreparable damage.

6. Paragraph 4 of the complaint sets forth an adequate remedy without resorting to law or equity if there is any violation (of the company's rules or regulations or tariff or subscribers' contracts) by the subscribers of the telephone company.

The first point of the defendants' motions is that the telephone company is not the owner of the directories involved and does not have exclusive domain over the directories. It is, however, alleged in the first paragraph of the complaint that the plaintiff company is a public utility, furnishing telephone service to subscribers in certain counties of Illinois and elsewhere in Illinois, and is qualified and licensed under the statutes of Illinois and the rules of the Illinois Commerce Commission. Then it is alleged in the third paragraph of the complaint: "In the course of its business, the telephone company furnishes its subscribers with equipment and facilities, including telephone directories, which are placed in the homes and offices of said subscribers, and which under the terms and provisions

49

of the rules of the Illinois Commerce Commission and the contracts between the telephone company and its subscribers, remain the property of the telephone company at all times, as will hereinafter more fully appear."

Then paragraph four of the complaint sets forth some of the provisions of the company's tariff on file with the Illinois Commerce Commission and in effect at the times referred to in the complaint, relative to the equipment, instruments, and lines furnished by the telephone company and located on the subscriber's premises, to the effect that such shall be and remain the property of the company, and, further, that subscribers shall not use any mechanical apparatus or device in connection with the equipment or facilities furnished by the company without consent of the company, or permit attachment of advertising devices without approval of the company, and if any apparatus or device of any kind other than that furnished or approved by the company is attached or connected to the company's property, the company may remove the apparatus or device, or suspend, or terminate the service.

In paragraph five of the complaint, after referring to another provision of the company's tariff, in effect at the times referred to in the complaint, it is alleged that the same provides: "Directories regularly furnished to subscribers are the property of the telephone company, are loaned to subscribers only as an aid to the use of the telephone service, and are to be returned to the telephone company upon request or when new directories are issued. The telephone company shall have the right to make a charge for directories issued in replacement of directories lost, destroyed, defaced, or mutilated, while in the possession of the subscriber."

██ Reading those paragraphs 1, 3, 4 and 5 of the complaint together, there is a positive averment that the directories are the property of the telephone com-

50

pany. It is stated in California Fireproof Storage Co. v. Brundige, 199 Cal. 185, 248 Pac. 669, that: "A telephone directory is an essential instrumentality in connection with the peculiar service which a telephone company offers for the public benefit and convenience. It is as much so as is the telephone receiver itself, which would be practically useless for the receipt and transmission of messages without the accompaniment of such directories." A telephone directory is an essential feature of the service rendered by the telephone company: McTighe v. New England Tel. & Tel. Co., 216 F.2d 26 (C.A. 2nd 1954). We think it is reasonably common knowledge that a telephone company customarily simply furnishes, provides, or lends facilities for the use of its subscribers and does not make a sale or lease of the equipment,—such is recognized in Southwestern Bell Tel. Co. v. Dialite Dial Co., 102 F. Supp. 872 (U. S. D. C., W. D., Okla. 1951)—and the defendants suggest no reason and cite no authority as to why a telephone directory furnished for the use of the subscriber is or should be in this respect considered any different from other facilities it so furnishes for the use of its subscribers. The plaintiff refers to two unreported trial court decisions, one in Michigan, Michigan Bell Tel. Co. v. Wharram, Circuit Court, County of Oakland, In Chancery, November 16, 1949, and the other in Virginia, Lee Tel. Co. v. Walker, Corporation Court, Danville, February 27, 1954, copies of the opinions in which appear in the plaintiff's brief, and which are commented on by the defendants. The Michigan case involved covers for telephone directories and the defendants were enjoined from manufacturing and distributing the same; the Court held the directories were the property of the company, placing them in the hands of subscribers under a regulation similar in this respect to that of the present company referred to in paragraph five of the present complaint did not change the title, such regulation is for the guidance and con-

trol of the subscribers as well as the company, the directories are an essential and indispensable part of the service of the company, and the defendants had no interest by virtue of the subscribers' possession which was worthy of protection as against the company's ownership.

The complaint then further alleges that the defendant Miner sells advertising space on the plastic covers and distributes the covers to the plaintiff company's subscribers in various towns in Illinois; that the defendant Heyden manufactures the covers for Miner for such distribution; that the covers bear advertising material, and a few emergency phone numbers; when they distribute the covers the defendants enclose instructions urging the subscribers to affix them to their directories; and all of such is without the company's consent, approval, or permission. The defendants are alleged to have so sold, manufactured, and delivered such covers in some eleven different northern Illinois cities, villages, or towns in 1955, and to be about to distribute additional covers to subscribers in other unknown communities. It is also alleged that some of the printing on some of the covers is misleading and inaccurate in that some wrong numbers are printed on some of the covers, such as that in the directory for Glenview and Northbrook the plaintiff Babagian's number in Chicago is erroneously listed as being the number of the Northbrook Police, and this causes confusion, uncertainty, inconvenience, delays and expenses to that plaintiff, to the subscribers in Glenview and Northbrook, and to the telephone company in notifying its subscribers and in removing the covers. The complaint concludes by alleging that the affixing of the covers to the directories is a trespass upon the company's property, and an unlawful interference with the contracts existing between it and its subscribers and an unlawful inducement by the defendants of the subscribers to breach their contracts; unless the defend-

52

ants are restrained from making further deliveries thereof and ordered to remove those already distributed, the plaintiffs will be irreparably damaged; and the plaintiffs are without adequate remedy at law.

■ It has long been the rule, of course, that a motion to strike or dismiss a complaint admits, for the purpose of the motion, all the facts well pleaded, so we must accept those allegations of fact to be true for the present purpose. The telephone company claims that the alleged acts of the defendants are a continuing and repeated trespass upon its property (the directories), an unlawful interference with its contractual relations with its subscribers and an unlawful persuasion, solicitation, or inducement of its subscribers to breach their contracts with it, and unfair competition in advertising, and that the only way to stop the same is by a Court order enjoining the defendants from further proceeding to place these covers on the directories. The defendants claim that it does not appear from the complaint that they are trespassing upon the property of the telephone company because the company does not have the immediate possession of the directories; the company can repossess itself of the directories (or suspend or terminate the service) if the subscriber is violating any of the rules of the company; the complaint does not allege facts bearing upon any alleged unfair competition and does not charge the defendants with unfair competition; the complaint does not allege facts showing a contractual relationship between the company and its subscribers with which the defendants have interfered; and the complaint does not allege facts showing an irreparable injury or that the company has no other adequate remedy available to it.

■ We think that the complaint sufficiently alleges that the directories are the property of and belong to the telephone company, are loaned to the subscribers as an aid to the use of telephone service, and are to be returned to the company upon request, and that, hence,

53

the company could at any time resume actual possession thereof, so that while the company necessarily does not have the directories in its actual physical possession when they are in or on the subscriber's premises, it does have the absolute ownership of and property in them, the constructive possession of them, and the right at any time to resume actual possession. Such constructive possession, under those alleged circumstances, is entirely sufficient to support an action for trespass, or for an injunction to enjoin continuing and repeated trespasses, if the plaintiff's damages are irreparable, and the remedy at law is inadequate.

In Cannon v. Kinney, 4 Ill. 9 (3 Scam. 8) (1841) the owner of a horse, who had loaned it to someone else, who, in turn, had put it with another party for feeding and safe keeping, was held entitled to recover in trespass against a third person who had taken and converted the horse, and the Court said: "To maintain the action of trespass to personal property, the plaintiff must, at the time the injury is committed, have the actual or constructive possession, and also a general or qualified property therein, which may be either, first, as in the case of the absolute or general owner, having the right to immediate possession; . . . this absolute ownership or general property in the chattel, prima facie, for all civil purposes, draws to it the possession. . . . As against a mere stranger, such as the defendant is shown to be in this case, who came into possession tortiously, he can maintain trespass. . . . the constructive possession of an owner is sufficient to entitle him to maintain trespass for taking the property out of the hands of a person to whom it is lent. . . . where the legal possession which is an incident to a general or absolute ownership, is in one who has not the actual keeping of the goods, he may bring this action. . . . the facts in this case abundantly show a sufficient possession on the part of the

54

plaintiff to entitle him to this action[5] against the defendant, a mere wrongdoer and a stranger."

The same is held in Callagan v. American Trust & Sav. Bank, 196 Ill. App. 102 (1915), where a chattel mortgagee in possession of personal property had been forcibly dispossessed and the defendant had later obtained possession from the dispossessor. We held the plaintiff chattel mortgagee could maintain trespass, and said: "The principal point made by the appellant in urging a reversal of the judgment in this case is that the appellees cannot legally maintain an action of trespass, because, at the time the property in question was seized by the appellant, the appellees did not have actual possession of the property. While possession is necessary as a matter of law, as a basis for maintaining an action of trespass, such possession in case of a legal owner need not be actual but may be constructive. . . . Any unlawful exercise of authority over the goods of another will support a trespass, even though no physical force is exercised. . . ."

There are other Illinois cases to this same effect, in principle, including some which are cited by the defendants: Dean v. Comstock, 32 Ill. 173 (1863); Scott v. Bryson, 74 Ill. 420 (1874); Miller v. Kirby, 74 Ill. 242 (1874).

In People's Tel. & Tel. Co. v. East Tenn. Tel. Co., 103 Fed. 212 (C.C.A. 6th, 1900) a defendant telephone company was enjoined at the instance of the plaintiff telephone company from installing or maintaining connections between its lines and the plaintiff's lines and property by certain desk telephones, switches, and wires on the subscriber's premises, the Court holding that the defendant was cooperating in unlawful invasions of the plaintiff's property rights as the owner of the lines and apparatus installed and operated by it, and that the defendant was a trespasser.

In the other unreported Virginia trial court decision, Lee Telephone Co. v. Walker, supra, referred to

by the plaintiff, which also involved covers for telephone directories, the Court held that the directories are personal property of the telephone company, the affixing of the covers was a trespass and burden upon its property, an injunction against the defendant seller thereof was proper, and the remedy at law was not complete or adequate.

The defendants have referred us to no case to the effect that, under such circumstances as are alleged in the complaint here, a telephone company is not the owner of the directories, does not have constructive possession thereof when they are in or on its subscriber's premises, and cannot as against a third party maintain trespass relating thereto or an injunction against continuing and repeated trespasses relating thereto.

The further basis upon which the complaint is properly founded, assuming the allegations to be true for the present purpose, is that, if true, the defendants have, without justification, repeatedly and continuously persuaded, solicited, or induced the telephone subscribers to breach their contracts with the plaintiff company, and propose to continue to do so in the future, and have interfered in those contractual relationships, to the injury and expense of the plaintiff and the benefit of the defendants, by using this mechanical apparatus or device in connection with equipment or facilities furnished by the company, without its consent, or attaching such advertising devices to such equipment or facilities without its approval, or attaching or connecting to the company's property this apparatus or device it being one of a kind other than that furnished or approved by the company, and such is a tortious interference with the contractual relationships between the company and its subscribers.

Under the Public Utilities Act the term "rate" includes, among other things, any schedule or tariff of any rate, toll, or charge, and any rule, regulation,

56

practice or contract relating thereto, Ch. 111⅔, Ill. Rev. Stats. 1955, par. 10.16; the utility must file with the Illinois Commerce Commission and print and keep open to public inspection schedules showing all rates; it must file with and as a part of such schedule and state separately all rules and regulations that affect the rates charged (par. 33); the schedules must be plainly printed, mimeographed, or typewritten, a copy posted or kept on file in every station or office of the utility where the public transacts business with it, to be immediately produced for inspection upon demand of any person, and a notice stating such schedules are on file and open to inspection and that an agent will assist any person to determine any rules or regulations must be posted in two public places in each such station or office (par. 34); no public utility shall undertake to perform any service until the rates and rules and regulations have been so filed and published (par. 35); except as in the act otherwise provided, no public utility shall extend to anyone any form of contract, rule, regulation, facility, or privilege except as are regularly and uniformly extended to all (par. 37); and no public utility shall grant any preference or advantage to anyone or subject anyone to any prejudice or disadvantage (par. 38).

▮ The complaint alleging that the plaintiff is an operating Illinois telephone utility, that in the course of its business it furnishes its subscribers directories, and that its filed tariff in effect at the pertinent times contained the provisions, rules and regulations, referred to in paragraphs 4 and 5 thereof as hereinbefore stated,—and it being forbidden by the act to perform any service until its rates, rules, and regulations have been filed and published,—it will be presumed for the present purpose that it filed and published its schedules pursuant to and otherwise complied with the act, so far as presently material: Hite v. Cincinnati, I. & W.

R. Co., 284 Ill. 297 (1918). Under the act its schedule or tariff and its rules and regulations constitute parts of its rate. Its rules and regulations are a part of that schedule or tariff. Its forms of contract have to be regular and uniform and as stated in the schedules. Its schedules were open to public inspection by its subscribers, or these defendants, or anyone else either at the Illinois Commerce Commission or the company's stations or offices. Its schedule or tariff so filed is, in effect, a statement of the terms and conditions upon which it will and does render its service.

■■ The company's official tariff on file, publicly, with the Illinois Commerce Commission, containing, inter alia, the foregoing provisions here material as a part of the terms and conditions upon which telephone service is rendered, is necessarily a component and integral part of its contracts and relationships with its subscribers, expressly or by implication or by operation of law; the subscribers are bound thereby, as is the company; it cannot deviate and its subscribers cannot deviate therefrom; and the defendants, whether they have actual knowledge thereof or not, are, of course, presumed to know the law, and are chargeable with notice thereof: Rager v. Western Union Tel. Co., 313 Ill. App. 589 (1942); Hedley v. Michigan Cent. R. R. Co., 310 Ill. App. 201 (1941); Wernick v. West. Union Tel. Co., 290 Ill. App. 569 (1937); McTighe v. New England Tel. & Tel. Co., 216 F.2d 26 (C.A. 2nd 1954).

■ Although the complaint in respect to the subscribers' contracts is not as explicit perhaps as might be desired, it sufficiently appears therefrom that the plaintiff does have contracts between itself and its subscribers. Whether those be express, or implied, oral, or written, or partly oral and partly written, does not appear. But it is not necessarily essential that the complaint specifically allege whether they be express,

58

or implied, oral, or written, or partly both. It is enough if the ultimate fact of the existence of such contracts be alleged and their essential terms material to the case sought to be stated in the complaint be set forth.

In Pure Milk Ass'n v. Kraft Foods Co., 8 Ill.App.2d 102 (1955) the defendant company had, in effect, procured or induced some of the plaintiff association's members to breach their contracts with the association as to payment to the association by the defendant of amounts due the members for milk sold the defendant, and the plaintiff brought suit to enjoin the defendant from further alleged tortious interference with the contractual relations between the plaintiff and its members. We held that there was such a tortious interference and that an injunction did lie. In the course of the opinion, we said, quoting from Bowen v. Hall, 50 L. J. Q. B. 305: "Merely to persuade a person to break his contract may not be wrongful in law or in fact. But, if the persuasion be used for the indirect purpose of injuring the plaintiff or of benefiting the defendant at the expense of the plaintiff, it is a malicious act, which is in law and in fact a wrong act, and, therefore, a wrongful act and, therefore, an actionable act if injury ensues from it," and we further said: "Under the authorities, it (the defendant) owed appellant (the plaintiff) the duty not to persuade or solicit its members to breach their contract. Appellee (defendant) violated that duty and is responsible to appellant for the damages occasioned thereby."

Other Illinois cases to the same effect are: London Guarantee and Acc. Co. v. Horn, 206 Ill. 493 (1904); Meadowmoor Dairies Inc. v. Milk Wagon Drivers' Union of Chicago No. 753, 371 Ill. 377 (1939).

In Southwestern Bell Tel. Co. v. Dialite Dial Co., supra, the telephone company was seeking to enjoin and the Court did enjoin the dial company from furnishing dialites, metal or plastic discs, an advertising medium, to be placed as dial attachments on the dial

handsets of the telephone company. The applicable provisions of the telephone company's tariff there were approximately the same as certain material parts of the present telephone company's alleged tariff referred to in paragraph four of the present complaint. In the opinion the Court said: ". . . their sales of Dialite devices . . . constitute repeated and continuing inducements to the customers of plaintiff to breach their contracts with the plaintiff. . . . The repeated and continuing interference by defendants with the contractual relationship between the plaintiff and its customers is tortious and should be enjoined. . . ."

A provision in a contract between a telephone company and its subscriber that the subscribers shall not attach to the telephone company's wires any equipment or apparatus not furnished by such company, is a valid regulation, and the subscriber is not justified in installing his own equipment: Beach v. Chicago Tel. Co., 1 Ill. C. C. 158 (Circuit Court 1906); Standard Glass Co. v. Chicago Tel. Co., 2 Ill. C. C. 154 (Superior Court 1907). We see no reason in principle why the same rule does not apply to the company's directories. The defendants refer us to no case to the effect that, under such circumstances as are alleged in the present complaint there is no tortious interference by the third party with the contractual relationships between the telephone company and its subscribers.

It is claimed in the second point raised by the defendants that paragraph four of the complaint sets forth certain provisions of the tariff or rules and regulations of the telephone company pertaining only to apparatus and equipment actually used in the transmission of telephone service, and does not relate to directories, and, in addition, that such sets forth an adequate remedy against the subscribers who may be violators, without resort to an injunction. We believe, however, that telephone directories are "equipment"

or "facilities" furnished by the company within the meaning of those terms as used in the company's tariff, as alleged in paragraph four, and that these plastic covers are a "mechanical apparatus or device" or "advertising devices," or "any . . . apparatus, or device of any kind other than that furnished or approved by the telephone company" within the meaning of such terms as used in that tariff.

██ By dictionary definition, Webster, New International Dictionary, 2d ed., p. 865, "equipment" means, inter alia, "the articles comprised in an outfit"; and p. 908, "facility" means, inter alia, "a thing that promotes the ease of any action, operation, transaction, or course of conduct." A telephone directory readily can be said to be an article comprised in a telephone outfit, and a directory is certainly a thing that promotes the ease of telephone operations. As the Court said in People ex rel. Schlaeger v. Bunge Bros. Coal Co., 392 Ill. 153 (1945); "The word 'facilities' is not a technical word but one in common use, and its meaning is to be found in the sense attached to it by approved usage. Standard lexicographers give 'aid,' 'assistance,' and 'help' as synonyms or equivalents of 'facility.' . . . In Nekoosa-Edwards Paper Co. v. Minneapolis Ry. Co., 217 Wis. 426, 259 N. W. 618, . . . the Supreme Court of Wisconsin held . . . that the word 'facility' is a very inclusive term and was intended to embrace anything which aided or made easier the performance of the duty which the carrier was required to perform." Also, Webster, supra, p. 1525, "mechanical" means, inter alia, "of, pertaining to or concerned with . . . manual operations"; p. 129, "apparatus" means, inter alia, "a collection or set of materials, implements, or utensils for a given work"; and p. 713, "device" means, inter alia, "that which is devised, or formed by design; a contrivance; or invention . . . a mechanical or practical contrivance to serve a special purpose

61

. . . invention; contrivance." These plastic covers do pertain to or are concerned with a manual operation,—they are to be put on or taken off a directory by hand. They may possibly not be within the dictionary meaning of "apparatus," as such, but they are a thing which is devised, or formed by design, a contrivance, an invention, or a mechanical or practical contrivance to serve a special purpose, and, hence, are readily within the meaning of "device." Since they allegedly bear advertising they are, necessarily, "advertising devices."

 Even if the phraseology in the tariff,—"Equipment, instruments and lines on subscriber's premises, furnished by the telephone company, shall be and remain the property of the telephone company" pertained only to apparatus and equipment actually used in the transmission of telephone service, as the defendants argue, a telephone directory is an essential instrumentality in connection with the peculiar service the company renders and is as much so as is the telephone handset or transmitter or receiver, and is, hence, an integral part of the equipment actually used in the transmission of telephone service. The rest of the equipment, in fact, is practically useless without the directory. A telephone directory would seem to be well within the statutory meaning of "service" as applied to a telephone company, Ch. 111⅔, Ill. Rev. Stats. 1955, par. 10.15.

The defendants say, third, that the provision of the tariff referred to in the 5th paragraph of the complaint contains no reference to any advertising in or on the telephone directories and no reference to covers thereon. That there is no reference therein to advertising in or on the directories is immaterial because, it not being alleged in the complaint that there is any advertising in the telephone directories, the plaintiff is evidently not basing its present complaint thereon. That

there is no reference therein to covers for the directories is not significant if that matter is embraced by the other provisions of the tariff alleged in paragraph four, as we think is the case.

██ Fourth, the defendants say in their motions that they have no contract or other dealings with the plaintiff telephone company and are engaged themselves in a lawful business which the plaintiff is attempting to injure and has injured and damaged by this proceeding. The defendants do not urge this in their brief, however, and it may be considered waived. That they have no contract with the plaintiff would seem to be wholly irrelevant, in any event. They may, nevertheless, in a proper case, be guilty of a tort and be subject to an injunction regardless of their lack of contractual relations with the plaintiff. That their business, as such, may be lawful,—and there is no contention it is not,—does not permit them in the conduct thereof to commit trespasses on the plaintiff's property or tortiously participate in persuading, soliciting, or inducing repeated breaches by the telephone subscribers of their contracts with the plaintiff to the injury of the plaintiff and the benefit of the defendants.

██ The defendant's fifth point in their motions is that there is no showing of irreparable injury. The complaint alleges certain inaccuracies in certain phone numbers listed on some of the plastic covers, confusion and uncertainty to the subscribers, and necessary expense to the company in notifying its subscribers and in removing the covers. The very nature of the case,— alleged continuing and repeated trespasses upon substantial numbers of the plaintiff's properties, its directories, and alleged continuing and repeated tortious persuasions, solicitations, or inducements of substantial numbers of subscribers to breach their contracts with the plaintiff—makes quite impracticable, if not impossible, the prosecution by the plaintiff of a multi-

plicity of small suits at law against the subscribers or these defendants, or both, with the attendant inordinate and disproportionate expense thereof. The nature of the case would seem to indicate that the measurement and calculation of technical money damages in a multitude of such separate suits at law would be extremely difficult, if not utterly impossible.

The plaintiff contends as a part of its theory that the printing of these covers and distribution of them to their subscribers is unfair competition in advertising, and it uses considerable space in its brief in attempting to show that it is. The defendants say, however, that there is no such charge in the complaint and no facts alleged therein upon which to base it, and to that extent we agree with the defendants. We are unable to see wherein the present complaint charges unfair competition in advertising as a distinct ground for relief or alleges sufficient facts as a foundation therefor. It may possibly be common knowledge that all the plaintiff's telephone directories here involved contain advertisements, but nowhere in the present complaint is anything said about that, and we cannot take judicial notice of such supposed facts. The plaintiff's contention in that respect is simply not properly presented or borne out by the present pleading, and, regardless of the merit or lack of merit therein if properly pleaded, it is unnecessary that we express any further opinion thereon.

For the reasons stated, we believe that the complaint states a cause of action and the Court erred in dismissing the same and dissolving the temporary injunction. The order, therefore, is reversed and the cause remanded, with directions to overrule the motions to dismiss the complaint and quash the temporary injunction.

Reversed and remanded.

64

DOVE, P. J., concurs in the conclusion that the order appealed from should be reversed and the cause remanded.

EOVALDI, J., concurs.