146

ELIZABETH SMITH, Plaintiff-in-Error, v. SOUTH-
ERN BELL TELEPHONE AND TELEGRAPH COM-
PANY, Defendant-in-Error.—364 S. W. (2d) 952.

Western Section at Jackson. June 29, 1962.

Certiorari Denied by Supreme Court December 14, 1962.

James D. Causey, Memphis, for plaintiff in error.

Carroll C. Johnson, Memphis, Waring, Walker, Cox & Lewis, Memphis, of counsel, for defendant in error.

AVERY, (P.J.W.S.). This is a suit by Elizabeth Smith, the original plaintiff, against the Southern Bell Telephone and Telegraph Company for damages, alleging in Count I breach of contract in connection with the listing of her florist shop in the City of Memphis, in its classified directory or "yellow pages", and in Count II of the declaration alleging damages as the result of negligence in such advertisement. Each count alleges damage in the amount of $15,000 or a total damage of $30,000.

The parties will be shown in this opinion as in the Court below. That is to say, Elizabeth Smith will be referred to as plaintiff and Southern Bell Telephone and Telegraph Company as defendant.

In substance the declaration alleges that the plaintiff had operated a florist shop in the City of Memphis for years and that she had carried an advertisement in the classified columns usually referred to as the "yellow pages" of the defendant's directories as they were issued, under the name "ELIZABETH'S EAST MEMPHIS FLORIST", it then alleges that she entered into a contract with the defendant on June 7, 1959, for such an advertisement in its published directory.

It alleges that instead of listing her business under the name quoted above that the Telephone Company listed it in the "yellow pages" as "SMITH, ELIZABETH'S FLORIST". It alleges she was not known by that name and that her business had suffered greatly on account of that error. She then avers that she tried to

get defendant to run some ad or do something to correct same by calling it to the attention of her customers, and that defendant refused to do that.

In the second count she alleges that defendant was guilty of negligence in editing the said telephone book in its "yellow pages" in the manner set forth in the first count and because of that negligence she has been damaged.

Defendant plead not guilty to each count of the declaration, and thereafter on motion to require the defendant to plead more specifically, which was granted by the Court, the defendant filed its special pleas in which it denied each and every liability to the plaintiff, and in the special pleas it relies upon the provisions of a written contract and avers:

"The defendant admits that the plaintiff has been advertising in the yellow pages of its telephone directories for several years prior to 1959 as Elizabeth's East Memphis Florist. The defendant would further show that on January 12, 1959, the plaintiff entered into a contract for a similar listing with an additional listing as East Memphis Florist, for the telephone directory to be issued on June 7, 1959."

It then alleges that said contract which was signed by the plaintiff contains the following in its terms and conditions and upon which defendant specifically relies:

"The Telephone Company's liability on account of errors in or omissions of such advertising shall in no event exceed the amount of charges for the advertising which was omitted or in which the error occurred in the then current directory issue."

The pleas then aver that the limit of the liability of the defendant for error in the misprinting of the name in the directory aforesaid, if any, could not exceed $75.00, which was the charges made for the advertisement.

The company denies that there was any breach of its contract with the plaintiff and it denies that plaintiff suffered any damages from the alleged breach. It also denied every allegation of negligence set forth in each count of the declaration, and avers the listings were made in accord with the directions and requests of the plaintiff.

A replication was filed to the plea in which plaintiff states as follows:

"This plaintiff admits that the contract signed by the plaintiff contains on the back thereof the following terms and conditions:

" 'The Telephone Company's liability on account of errors in or omissions of such advertising shall in no event exceed the amount of charges for the advertising which was omitted or in which the error occurred in the then current directory issue.' 

"The plaintiff denies, however, that the provision, has any legal effect and denies that the parties are bound by this and further states that said attempted limitation of liability is contrary to public policy and is null and void. This plaintiff joins issue with the defendant on the rest of the allegations contained in the special pleas of the defendant."

The case was called for trial to the Court and jury and after opening statements were made to the Court and jury, the record shows that counsel for the plaintiff

stated that plaintiff relied upon the written contract, signed by plaintiff, and at the end of the opening statement this contract was admitted in evidence, whereupon motion was made by defendant's attorney to uphold the above provisions of said contract and limit the liability of defendant. The Court then held the contract valid and the judgment recites:

"* * * That the Court was and is of the opinion, after argument of counsel, that said limitation of liability is valid and should be upheld and that, accordingly, said motion was sustained. That it was then stipulated by the parties hereto that the charges for advertising under said contract amounted to $75.00 and, no further proof being offered by either party, the Court directed a verdict for the plaintiff for the sum of $75.00 and the costs of the cause."

The record does not appear to show that exceptions were saved to the action of the Court, but a motion for new trial was made, the substance of which is that it was error both as to the applicable law and the facts for the Court to uphold the contract and limit the liability of defendant. The new trial motion sets out the provision of the contract so limiting same to be void for the reason that there was no consideration for said provision and that the contract was against public policy etc.

On the hearing of the motion for new trial it is shown in this bill of exceptions, which is a sort of a narrative form, the manner in which the case was presented to the Court and the jury, and then contains this following statement:

"* * * The respective Attorneys further stated that the defendant was relying on the following provision

of the contract which was introduced into evidence by stipulation as Exhibit # 1, and which is attached hereto and made Exhibit 1 of this Bill of Exceptions.''

Then there is set out the provisions of the contract limiting liability which is hereinbefore quoted. The original contract, or a duplicate thereof, is filed as said Exhibit 1. It appears to be signed: ''Elizabeth's East Memphis Florist, by Elizabeth J. Smith.''

Plaintiff has filed five assignments of error in this Court and they conform to the motion for new trial. There is no necessity to set them out, however, because taken separately or collectively they raise only one question to be determined by this Court, as follows:

IS THE CONTRACT ENTERED INTO BY THE PLAINTIFF WITH THE DEFENDANT WHEREIN THE LIABILITY FOR NEGLIGENCE IS LIMITED TO THE AMOUNT CHARGED FOR THE ADVERTISEMENT A VALID, ENFORCIBLE CONTRACT?

The Court below held that the provision was valid and as above stated directed the verdict, fixing same at $75.00 in favor of plaintiff and against defendant.

The argument is made by the plaintiff in this Court that because of the fact that the defendant is a public service corporation and a public utility in the field of its service in the area involved, it can not limit its liability in such a manner because such limitation is against public policy and unenforcible.

It is true that insofar as telephonic service is concerned the defendant is the only local telephonic service within the City of Memphis.

So the question resolves itself to a determination of whether or not that the telephone company by the use of the volume in which its directory is published furnishes a classified advertising service which we know as the service shown by the "yellow pages" wherein business, professions etc. under certain particular headings are listed and which constitutes a general advertising business, insofar as putting the names in the directory "yellow pages" of the firms is concerned, is acting in the capacity of a public utility. There is no regulation with respect to such advertisement by the Public Service Commission of Tennessee nor by the Federal Communication Commission known to this Court or shown by the record.

The record does not reveal the actual publication in that directory at which this action is levelled, but it must be assumed that even though the word "Smith" appears in the advertisement in front of the word "Elizabeth's Florist" that the location of her business is properly shown by a street number, or such other designated location as is shown by the copy of the contract which appears to be 612 S. Highland, and therefore the only error of defendant alleged as negligence in the declaration is that the word "Smith" is inserted in the advertisement.

Counsel for the plaintiff below rely upon several cases, one of which is the old case of Marr v. Western Union Telegraph Company, 85 Tenn. 529, 3 S. W. 496. It is shown by that opinion that the Western Union Telegraph Company had different rates, that is the Western Union Telegraph Company had a schedule of different rates, some five of them, which referred to different degrees of liability for error in its service as a public utility, the large the rate charged the greater the liability.

They also rely upon the opinion of Railroad v. Gilbert, Parkes & Co., 88 Tenn. 430, 12 S. W. 1018. In that case there was a loss by fire of cotton being transported by the railroad. There was a limitation in event of destruction of the cotton otherwise than by the negligence of the employees of the Railroad Company to the amount of the actual freight charged for its transportation. The cotton was actually being carried by the railroad when it was destroyed by a fire, thus the railroad was acting in its capacity as a public utility.

They also rely upon the case of Pepper v. Western Union Telegraph Company, 87 Tenn. 554, 11 S. W. 783, 4 L.R.A. 660, and Western Union Telegraph Co. v. Green, 153 Tenn. 59, 281 S. W. 778, 48 A.L.R. 301. The services being performed in each of the above cases was that type of public utility service, which the defendants themselves or the respective companies were entitled to do or required to perform in an efficient manner, and the uniform rule in such case is simply that no limitation of the public service corporation or public utility actually engaged in the service which it is performing as such public service corporation or utility is enforcible unless it is "just and reasonable in the eyes of the law."

We are confronted in the case before us, not with any negligence on the part of the telephone company in failing to properly list the correct name, telephone number, or the correct address of the parties in the directory where the name of the party is stated, without any reference to the question of advertising, such as is found in other sections of the directory than the "yellow pages."

It may be that a telephone company could not lawfully contract to limit its liability with respect to the actual

listing of the name of its subscriber or patron in the alphabetical list of subscribers, together with the correct street address and telephone number, since it is a matter of common knowledge that telephone companies, in order to increase their business as a public service comporation, or public utility, acting in the capacity as a telephone company, which throughout the years has published the name, street address and the telephone number of its subscribers in a directory and which service is paid for in the regular rate charged for same, but there is a vast difference between a public service corporation acting in its capacity as a public utility and acting outside of that capacity by contract made limiting liability for its negligence or mistakes in that type of service. Nothing is shown by this record that the defendant has such a contract other than the one relating to classified advertisement service.

There seems to be no case in Tennessee exactly in point, but the defendant has relied upon a number of cases from other jurisdictions and has cited some cases in Tennessee, all of which we have examined. For instance in a recent case, Moss v. Fortune, 207 Tenn. 426, 340 S. W. (2d) 902, in an opinion by Justice Felts, which grew out of injury received by a person riding a horse hired from a riding academy. That is not exactly in harmony with the work of a public utility, it is a private business, of course, but the riding academy known as "Fortune's Tropical Gardens" had each party who hired a horse sign a contract before letting him or her ride, in the following words:

"I am hiring your horse to ride today and all future rides at my own risk. Signed (in that case) Morris Moss,"

who was the plaintiff. The case was heard on demurrer and went directly to the Supreme Court, the demurrer being based solely and alone upon this contract which was alleged to have been in violation of public policy, void, etc., and Justice Felts said:

"It is well settled in this State that parties may contract that one shall not be liable for his negligence to another but that such other shall assume the risk incident to such negligence. Cincinnati, New Orleans & Texas Pacific Ry. Co. v. Saulsbury, 115 Tenn. 402, 90 S. W. 624; Carolina, C. & O. R. R. Co. v. Unaka Springs Lumber Co., 130 Tenn. 354, 170 S. W. 591; McKay v. Louisville & Northern R. R. Co., 133 Tenn. 590, 182 S. W. 874; Robinson v. Tate, 34 Tenn. App. 215, 236 S. W. (2d) 445."

Justice Felts did say in that case that:

"To this general rule there are some exceptions, not here material. For instance, a common carrier may not, by contract, exempt itself from liability for a breach of duty imposed on it for the benefit of the public; and a railroad cannot by contract exempt itself from liability 'for willful or gross negligence in running over a slave, asleep on the track.' " Citing several authorities.

He went on to further cite certain cases which held the railroad not exempt from liability for value of loss of baggage by limitation of liability printed on the back of the baggage check, but not called to the attention of the customer, of which the customer had no actual knowledge.

Certainly it should be said Justice Felts' statement with respect to some exception and making reference to

common carrier, meant that there were no exceptions except where the common carrier, which is a public utility was acting within the scope of its authority as such.

Judge Felts' opinion is further clarified by a citation to Carolina, C. & O. R. R. Co. v. Unaka Springs Lumber Co., supra, in which case it is said:

"There is no rule of policy which prevents a railway company from entering into a contract with a property owner, based on a valuable consideration, whereby it shall be exonerated from liability to the property owner for damages caused by fire, communicated from its locomotives, even though occasioned by its negligence; provided the agreement contains no provision which in any way involves the relation of the railway company as a common carrier to the other contracting party or the public."

That statement makes it very plain that the exception which Judge Felts was talking about was a contract in relation to its activity as a public utility, and duty it owed the public as such.

Accepting what we believe to be the proper rule we now quote from some cases from other jurisdictions. In McTighe v. New England Telephone and Telegraph Co. (1954) U.S.C.A. 2nd Circuit 216 F. (2d) 26, in preparing the opinion Judge Medina said:

"* * * True it is that the courts will scrutinize with care clauses exonerating public utility companies, such as railroads, telegraph and telephone companies and others, from liability for the consequences of their own negligence, with reference to the public

services rendered by them. * * * But the principle which enables courts to strike down and condemn clauses affecting the performance by the company of its functions as a public utility is limited to the area in which the public services are rendered and has no application whatever to the domain in which the public utility may freely contract in its private capacity. The obtaining of the services of the public utility by way of transportation or communications or providing gas or electricity is quite apart from the leases, advertising contracts and a host of other miscellaneous agreements commonly made by members of the public with public utility companies. If there be some disparity in the bargaining power of the contracting parties it is no more than may be found generally to exist; and the courts follow the general rule that the parties are free to contract according to their own judgment and the reasonableness of their engagements will not be entered into."

In that case the suit was based upon the omission of plaintiff's name from the classified section of the directory under contract with a similar limitation of liability as in the present contract. The opinion went on to say:

"It was not disputed that the classified directory was outside appellant's duties of public service and was 'a vehicle to secure advertising.' The trial judge also recognized that the classified directory was not controlled by the Public Service Commission, but was 'governed by the general law of contracts.'"

After commenting fully with respect to the telephone company's advertising matter, he said:

"* * * In entering into the advertising contract, the telephone company in its private capacity contracted as to matters outside the scope of its public service functions, and was free to include in the contract a limitation of liability, as this would not operate to defeat its public purpose. * * *"

In the case of Mitchell v. Southwestern Bell Telephone Co. (Mo.App.1957), 298 S.W.(2d) 520, is a case in which this question of error in the directory advertising matter and related to cause of the same character, the Court said:

"* * * the validity of the clause in the contract between the parties limiting the liability of the telephone company. * * *"

which is similar to the one involved, though not exactly in the same style or verbiage, is as follows:

"The applicant agrees that the Telephone Company's maximum liability for damages arising out of errors or omissions in the directory advertising to be provided shall be limited to the amount to be charged for such directory advertising."

The Court said:

"* * * The running of advertisements in the classified section of a telephone directory is not a public service but a matter of private contract between the subscriber and the telephone company and a contractual limitation of liability for the breach of such a contract is a valid limitation. Baird v. Chesapeake & Potomac Telephone Co., 208 Md. 245, 117 A.(2d) 873; McTighe v. New England Telephone & Telegraph Co., 2 Cir., 216 F.(2d) 26; Russell v. South-

western Bell Telephone Co., D.C.Tex., 130 F.Supp. 130." (p. 524).

In Russell v. Southwestern Bell Telephone Co. (D.C. 1955) 130 F.Supp. 130, approved and quoted in Faber v. Southwestern Bell Telephone Co. (D.C.Tex.1957), 155 F.Supp. 162, the Court said:

"* * * Apparently in those states where a telephone company is regulated by a state commission which has approved such a limitation of liability the question of reasonableness is primarily for such commission; but in states (such as Texas) where there is no such regulation, the question of reasonableness is for the court. * * *"

While we do have a Public Service Commission in Tennessee, it was admitted by counsel in the hearing of this case in this Court that the Public Service Commission has never exercised any control whatever over the right of a telephone company rendering this advertising service which will be referred to as "yellow pages" in the telephone directory, and there are no limitations upon such activity whatever.

It is a matter of common knowledge that telephone directories in large cities have a great many of these classified advertisements, and furthermore it is a matter of common knowledge that human activities are not always perfect, and that there is possibility of a misprint or mistake of some character in such advertisement, but we must bear in mind that while these classified ads, as we so call them in the "yellow pages" are peculiar to a telephone directory, advertising media is available in many different ways. We now have advertising by radio, by television, by newspaper, by United States mail and

many many other classes of ordinary advertising. As we see the situation there is nothing more than a simple mistake in connection with the arrangement of the name complained of in this cause, we are not in any position to say that such amounts to gross negligence, or wilful negligence, or wilful violation on the part of the company of its contract by which it received pay for this particular advertisement and limiting its ability for such mistake to the amount paid for such advertisement.

In the case of Hamilton Employment Service, Inc. v. New York Telephone Company, 253 N.Y. 468, 171 N.E. 710, which is a case of a similar character, the plaintiff had correct listing in the classified or "yellow page" section of the directory for a number of years of its location of its main office and its branch office, but there was a failure in connection with the correct listing in December of 1928. Trial Court dismissed the complaint and an appeal was perfected and the Appellate Court affirmed, saying:

"* * * In the absence of reasonable contract stipulations limiting liability for omissions and errors, defendant might perhaps be liable for breach of contract. Courts in other jurisdictions have so held or, at least, intimated. Masterson v. Chesapeake & Potomac Tel. Co., 55 App.D.C. 23, 299 F. 890;" and other citations there are made.

In the finality of that opinion the Court said:

"* * * In view of the language of the limiting regulation, the right to make reasonable regulations, and the absence of an allegation of gross negligence or willful misconduct, the dismissal of the complaint must be upheld."

In the case of Georges v. Pacific Telephone & Telegraph Co. (D.C.Or.1960), 184 F.Supp. 571, where a similar contract was under attack in a damage suit, the Court said:

"* * * So, it is the conclusion that the contract involved in this case is merely a contract on behalf of the plaintiffs' business for advertising space in the Telephone Company's Directory, particularly the yellow pages thereof, which is nothing more than a business venture engaged upon by the telephone people in their own private capacity. * * *"

Notwithstanding that the declaration in this case contains two counts, as hereinbefore stated, one based upon a breach of contract and the other negligence, we are of the opinion that the proper application of the matters contained in the written and signed contract by the plaintiff in this case, which is similar to the one required of all parties whose classified advertisements are placed within the directory, is a reasonable one, and that it is in no wise against public policy, nor is it a part of the utility business of the company, and that it is within the power of the company and the subscribers to its directory, to make a contract limiting liability for such errors therein.

We can see no reason why that a newspaper or other media of advertising should not come within the same class of such advertising as is found in our opinion here with respect to the involved contract. Of course, there may be some rules and regulations with respect to other advertising media which would create liability on the part of the advertising media, but we think the Court below acted properly in sustaining the validity of the contract and rendering a judgment for $75.00 which was

the amount of the subscriber—plaintiff's advertisement in the "yellow pages" of the directory, and the judgment of the lower Court is affirmed. All assignments of error are overruled. Judgment will be rendered here for plaintiff in the amount of $75.00, together with interest thereon from the date that the motion for new trial was overruled, but all the cost in the case in this Court will be taxed against the plaintiff below and paid to the Clerk of this Court from her cash appeal bond in the hands of the Circuit Court Clerk of Shelby County. Lower Court cost will remain taxed against defendant below.

Enter judgment accordingly.

Carney and Bejach, JJ., concur.