(No. 41659.—

SWENEY GASOLINE & OIL COMPANY, Appellant, *vs.* TOLEDO, PEORIA & WESTERN RAILROAD COMPANY, Appellee.

*Opinion filed March 27, 1969.*

SCHAEFER, J., dissenting.

EUGENE R. JOHNSON and GARY M. PEPLOW, both of Peoria, (WESTERVELT, JOHNSON, NICOLL & KELLER and HEYL, ROYSTER, VOELKER & ALLEN, of counsel,) for appellant.

CASSIDY, CASSIDY, QUINN & LINDHOLM, of Peoria, (JOHN E. (JACK) CASSIDY, JR., of counsel,) for appellee.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

The Sweney Gasoline & Oil Company brought an action in the circuit court of Peoria County against the Toledo, Peoria & Western Railroad to recover for damage to the plaintiff's property allegedly caused through defendant's negligence. After a nonjury trial, judgment was rendered for defendant. Plaintiff appeals directly to this court, on the theory that a constitutional question is involved.

The plaintiff oil company leased from the defendant railroad certain premises adjacent to the railroad tracks, on which plaintiff maintained a bulk oil station for the storage and distribution of gasoline, oil and other petroleum products. On January 21, 1963, a freight train operated by defendant became derailed and ran onto the leased premises, damaging the structures comprising the bulk oil station. The written lease between the parties contained an exculpatory clause providing that the "Lessee shall protect, indemnify and hold harmless Railroad, its agents, servants and employees, from and against any and all claims, demands, judgments, suits, costs, expenses and attorneys fees arising out of * * * loss or damage to property of any of the parties hereto, * * * whether caused by the negligence of Railroad or its agents, servants or employees or otherwise." In holding that the defendant was thereby exonerated from liability the trial court took note of a statute, passed in 1959, which declared void certain exculpatory clauses in leases. The statute provides: "Every covenant, agreement or understanding in or in connection with or collateral to any lease of real property, except those business leases in which any municipal corporation, governmental unit, or corporations regulated by a State or Federal Commission or agency is lessor or lessee, exempting the lessor from liability for damages for injuries to person or property caused by or resulting from the negligence of the lessor, his agents, servants or employees, in the operation or maintenance of the

demised premises or the real property containing the demised premises shall be deemed to be void as against public policy and wholly unenforceable." Ill. Rev. Stat. 1967, ch. 80, par. 15(a).

Claiming that the statute was the basis for the trial court's judgment, the plaintiff urges that it be held unconstitutional for making a discriminatory classification without any reasonable basis and for unlawfully granting to "regulated" corporations a special privilege and immunity. We agree with this argument and are of the opinion that the statute violates article IV section 22 of our constitution. We see no reasonable basis for exempting municipal corporations, governmental units or corporations regulated by a state or federal commission from the provisions of this statute. The statute in effect grants immunity to these governmental units and regulated corporations in an unconstitutional manner and is therefore void.

The relation of lessor and lessee has long been recognized as primarily a matter of private concern, and, in the absence of the above statute (which we have held unconstitutional), exculpatory agreements in residential as well as in business leases are ordinarily given effect, relieving the lessor from liability for injuries to the tenant's property due to the negligence of the landlord or his employees. (*O'Callaghan* v. *Waller & Beckwith*, 15 Ill.2d 436; *Jackson* v. *First National Bank of Lake Forest*, 415 Ill. 453.) This accords to the individual the dignity of being considered capable of making and standing by his own agreements.

Where there is such disparity of bargaining power between the parties that the lessee has no practical choice but to accept what is offered, enforcement will be denied on the ground that it would result in great injustice, and the plaintiff claims that such is the case here. To support the position, however, no facts are adduced. What the plaintiff relies on are simply general statements that "an entrepreneur desiring to enter a business requiring railroad service as a matter

of common knowledge is required, except at excessive expense, to locate its business facility upon or adjacent to a railroad right of way" and that: "Its alternatives are to accept the terms of the railroad lease or not to have available to it that which it must have in order to carry on business; namely, the service of a railroad." Plaintiff points to nothing in this record to indicate that the parties were not dealing at arm's length and upon an equal footing. No evidence was introduced to show that to locate its facility elsewhere the plaintiff would incur "excessive expense," or that the expense thereof would be greater than others incur who are so located, or who use other kinds of transportation facilities, or that other circumstances were present forcing the oil company to take this particular location upon terms offered by the railroad.

It is also argued that the damage was inflicted as a result of a trespass by the railroad, and that the lease does not purport to exculpate from liability for trespass. By the provisions in question the lessee undertook to hold the railroad harmless from liability for damage to its property "whether caused by the negligence of Railroad or its agents, servants or employees or otherwise." There is no claim that the train was intentionally derailed and caused to run upon the premises, and regardless of whether a technical trespass occurred the cause of the accident can be attributed to nothing more on the part of defendant than its alleged negligence.

Plaintiff further contends the clause in question is phrased in confusing language, and should be strictly construed against the party benefited by it. We think the intent of the present one is visible, through its legalistic jargon. However, verbose its language may be, it exempts the railroad from liability to the lessee for any damage to the latter's property caused by the negligence of the railroad and is adequate to cover the present situation.

It is lastly urged that this court re-examine its holding in *O'Callaghan* v. *Waller & Beckwith Realty Co.,* 15 Ill.2d

436, sustaining the validity of exculpatory clauses. It is pointed out that *O'Callaghan* concluded with a statement that the subject is one more appropriate for legislative than judicial action, and that shortly after the decision in that case the statute was enacted. We have no way of knowing whether the legislature would have enacted the statute without the fatal exceptions; however, we are still of the opinion that this is a matter for the legislature.

After carefully considering all of the plaintiff's contentions we find that as applied to the facts shown by this record the exculpatory provisions in question are not invalid, that as drawn they are sufficient to cover the present situation, and that there is nothing in the relationship of the parties to prevent enforcement. The circuit court was correct in finding for the defendant, and its judgment is affirmed.

*Judgment affirmed.*

Mr. Justice Schaefer, dissenting:

In 1958, in *O'Callaghan v. Waller & Beckwith Realty Co.*, 15 Ill.2d 436, this court considered the validity, at common law, of exculpatory clauses in residential leases. The case was a very close one, and two members of the court joined in a strong dissent from the opinion which sustained their validity. The prevailing opinion concluded with a request for legislative action: "Other jurisdictions have dealt with this problem by legislation. [Citations.] In our opinion the subject is one that is appropriate for legislative rather than judicial action." (15 Ill.2d at 441.) The General Assembly responded promptly, and in 1959 adopted the statute which is now held unconstitutional.

I agree that the statute as written violates the constitution, for the reasons stated in the opinion of the majority. But I regard the enactment of the statute as an expression of the public policy of the State which this court should respect, even though it cannot be given complete effect ac-

cording to its terms. That statute declares "void as against public policy and wholly unenforceable" every exculpatory clause in any lease, business or residential, with the narrow and irrational exception in favor of particular lessors and lessees of business property which totally defeats its major purpose. I would hold that the statute, despite its invalidity, is an expression of public policy which fully justifies this court in now holding, as a matter of common law, that ex· culpatory clauses in leaseholds are void.