(No. 56002.—

McCLURE ENGINEERING ASSOCIATES, INC., Appellant, v. THE REUBEN H. DONNELLEY CORPORATION, Appellee.

*Opinion filed February 18, 1983.—Rehearing denied April 8, 1983.*

Francis R. Van Hooreweghe, of Van Hooreweghe, Fackel & Thuline, of Moline, for appellant.

Joel A. Haber, Alvin D. Meyers, and Steven J. Teplinsky, of Chatz, Berman, Maragos, Haber & Fagel, of Chicago, for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, McClure Engineering Associates, Inc., entered into several contracts with defendant, the Reuben H. Donnelley Corporation, whereby defendant agreed to place advertisements for plaintiff in the yellow pages classified telephone directories for the communities of Geneseo and Freeport. When the ads failed to appear in the Geneseo directory in either 1976 or 1977, and in the Freeport directory in 1977, plaintiff filed suit against defendant in the circuit court of Rock Island County, seeking over $45,000 in damages. On defendant's motion, the trial court granted a directed verdict in plaintiff's favor for $271.70, which was the price of the advertising, and costs. The appellate court affirmed (101 Ill. App. 3d 1109), and we granted plaintiff's petition for leave to appeal.

In 1975 plaintiff, a professional engineering firm, wished to open branch offices in Freeport and Geneseo; the yellow pages listing was important to it because plaintiff was ethically precluded from any other type of advertising. The directories for those communities were published, respectively, by the Northwestern Telephone Company and the Geneseo Telephone Company, with defendant serving as one of their sales agents. Although plaintiff's president testified that he believed the listing to be available only through defendant, notices printed at the front of the yellow pages directories indicated that potential advertisers could also deal directly with the telephone companies or with L. M. Berry & Company, an Ohio-based publisher. In addition, defendant's contracts provided that an advertiser could cancel an agreement at any time prior to the date of publication; plaintiff's president, who was responsible for placing the ads, testified that he had not read all of the terms before signing the contracts.

Both the trial and appellate courts predicated their conclusions on a contract clause which limited the liability of both defendant and the directory publisher. That clause provided:

> "The advertiser is expected to pay the rate as billed. The liability of the Telephone Company in connection with any error or omission in publication of, or failure to publish, any item of advertising in any issue of any directory, shall be limited to the charges for the publication of such issue of the item of advertising involved, excluding charges for cuts, engravings or electrotypes. The term 'Telephone Company' shall include any or all Telephone Companies involved in this transaction, the Selling Company, the Publishing Companies, or any representative of said company or companies."

In practical effect, the provision constitutes an exculpatory clause, as defendant must return only the advertising cost in the event that a listing is omitted. The sole issue facing this court is whether the exculpatory clause is valid and can be enforced.

Plaintiff seizes upon the language of the exculpatory clause which states that the term "Telephone Company" shall include any selling company to argue that defendant is not an independent business entity, but should be considered simply as an extension of the telephone companies. Consequently, plaintiff urges, a monopoly exists in the solicitation of yellow pages advertising and this lack of competition, when coupled with the commercial importance of directory listing, creates a public interest in prohibiting exculpatory clauses in these contracts. Examination of the record, however, clearly indicates that defendant is a separate business entity, and it appears to us that the language used in the provision focused on by plaintiff served only as a convenient means of defining the parties protected under the clause.

We do not agree with plaintiff's assertion that defendant's exculpatory clause violates public policy. Public policy,

a "principle of law which declares that no one may lawfully do that which has a tendency to be injurious to the public welfare" (*People ex rel. Nelson v. Wiersema State Bank* (1935), 361 Ill. 75, 86), is found in our constitution, statutes and judicial decisions (*People ex rel. Nelson v. Wiersema State Bank* (1935), 361 Ill. 75; *Knass v. Madison & Kedzie State Bank* (1933), 354 Ill. 554; *City of Champaign v. Department of Revenue* (1980), 89 Ill. App. 3d 1066). Public policy strongly favors freedom to contract (*O'Callaghan v. Waller & Beckwith Realty Co.* (1958), 15 Ill. 2d 436, 438), as is manifest in both the United States Constitution and our constitution. (See U.S. Const., art. I, sec. 10; Ill. Const., art. I, sec. 16.) Too, we think it significant that while the legislature has expressly recognized the need to regulate contractual liability in certain situations (see, *e.g.*, Ill. Rev. Stat. 1975, ch. 26, par. 7—204 (professional bailees); Ill. Rev. Stat. 1975, ch. 71, par. 1 (innkeepers); Ill. Rev. Stat. 1975, ch. 80, par. 91 (residential landlords)), there is no legislation concerning this type of contractual relationship between private corporations.

The decisions of this court have consistently reflected a judicial concern with balancing the need to respect the right to freely contract with the need to protect parties from unfair provisions in contracts involving publicly regulated activities. (See, *e.g.*, *Sweney Gasoline & Oil Co. v. Toledo, Peoria & Western R.R. Co.* (1969), 42 Ill. 2d 265; *Jackson v. First National Bank* (1953), 415 Ill. 453; *Chicago & Northwestern Ry. Co. v. Chapman* (1890), 133 Ill. 96; *Tyler, Ullman & Co. v. Western Union Telegraph Co.* (1871), 60 Ill. 421; see also Annot., 175 A.L.R. 8 (1948), and A.L.R. Blue Book of Supplemental Decisions 622 (1982).) However, in the nonregulated areas the decisions of this court and those of other jurisdictions reflect a widespread policy of permitting competent parties to contractually allocate business risks as they see fit. (*Schlessman v. Henson* (1980), 83 Ill. 2d 82; *Jackson v. First National*

*Bank* (1953), 415 Ill. 453. See also *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.* (1946), 395 Ill. 429. Accord, *Reserve Insurance Co. v. Pisciotta* (1982), 30 Cal. 3d 800, 640 P.2d 764, 180 Cal. Rptr. 628; *Jones v. Dressel* (Colo. 1981), 623 P.2d 370; *Emory University v. Porubiansky* (1981), 248 Ga. 391, 282 S.E.2d 903; *Occidental Savings & Loan Association v. Venco Partnership* (1980), 206 Neb. 469, 293 N.W.2d 843; *Gross v. Sweet* (1979), 49 N.Y.2d 102, 400 N.E.2d 306, 424 N.Y.S.2d 365; *Brittain v. Booth* (Wyo. 1979), 601 P.2d 532; *Belger Cartage Service, Inc. v. Holland Construction Co.* (1978), 224 Kan. 320, 582 P.2d 1111; *Olson v. Molzen* (Tenn. 1977), 558 S.W.2d 429; *Weaver v. American Oil Co.* (1971), 257 Ind. 458, 276 N.E.2d 144; *Rawlings v. Layne & Bowler Pump Co.* (1970), 93 Idaho 496, 465 P.2d 107; *Dilks v. Flohr Chevrolet, Inc.* (1963), 411 Pa. 425, 192 A.2d 682.) "This accords to the individual the dignity of being considered capable of making and standing by his own agreements." *Sweney Gasoline & Oil Co. v. Toledo, Peoria & Western R.R. Co.* (1969), 42 Ill. 2d 265, 267.

Plaintiff combines its public policy argument with the contention that defendant took advantage of an unreasonably advantageous bargaining position to engage in overreaching. Using an exculpatory clause does not in and of itself constitute overreaching. Nor do we consider, in the context of this record, that defendant's bargaining position was shown to be unreasonably advantageous. Much of the power which plaintiff attributes to defendant rests on plaintiff's unfounded assumption that defendant was the sole party with whom it could have dealt. The actual bargaining position of these parties, however, is unclear. The record does not disclose the contract terms which L. M. Berry & Company or either of the telephone companies would have offered plaintiff, and we simply do not know whether they would have been more or less favorable. But even more persuasive are the many decisions in other juris-

dictions which recognize that yellow pages advertising is a nonregulated activity, refuse to find unconscionable bargaining, and uphold the exculpatory clauses used in such contracts. See *Gas House, Inc. v. Southern Bell Telephone & Telegraph Co.* (1976), 289 N.C. 175, 221 S.E.2d 499; *State ex rel. Mountain States Telephone & Telegraph Co. v. District Court* (1972), 160 Mont. 443, 503 P.2d 526; *Warner v. Southwestern Bell Telephone Co.* (Mo. 1968), 428 S.W.2d 596; *Federal Building Service v. Mountain States Telephone & Telegraph Co.* (1966), 76 N.M. 524, 417 P.2d 24; *Pride v. Southern Bell Telephone & Telegraph Co.* (1964), 244 S.C. 615, 138 S.E.2d 155; *Baird v. Chesapeake & Potomac Telephone Co.* (1955), 208 Md. 245, 117 A.2d 873; *Louisville Bear Safety Service, Inc. v. South Central Bell Telephone Co.* (Ky. 1978), 571 S.W.2d 438; *Robinson Insurance & Real Estate, Inc. v. Southwestern Bell Telephone Co.* (W.D. Ark. 1973), 366 F. Supp. 307; *Cunha v. Ohio Bell Telephone Co.* (1970), 26 Ohio Misc. 267, 271 N.E.2d 321; *Wheeler Stuckey, Inc. v. Southwestern Bell Telephone Co.* (W.D. Okla. 1967), 279 F. Supp. 712; *Wilson v. Southern Bell Telephone & Telegraph Co.* (La. App. 1967), 194 So. 2d 739; *Advance Service, Inc. v. General Telephone Co.* (Fla. App. 1966), 187 So. 2d 660; *Smith v. Southern Bell Telephone & Telegraph Co.* (1962), 51 Tenn. App. 146, 364 S.W.2d 952; *Wade v. Southwestern Bell Telephone Co.* (Tex. Civ. App. 1961), 352 S.W.2d 460; *Georges v. Pacific Telephone & Telegraph Co.* (D. Or. 1960), 184 F. Supp. 571; *Neering v. Southern Bell Telephone & Telegraph Co.* (S.D. Fla. 1958), 169 F. Supp. 133.

For the reasons stated, the judgment of the appellate court affirming the judgment of the circuit court of Rock Island County is affirmed.

*Judgment affirmed*

JUSTICE GOLDENHERSH, dissenting:

I dissent. I would hold the exculpatory clause void as against public policy and reverse the judgment. The major-

ity states, "Much of the power which plaintiff attributes to defendant rests on plaintiff's unfounded assumption that defendant was the sole party with whom it could have dealt." (95 Ill. 2d at 73.) This is an unrealistic evaluation of the evidence in view of the fact that the exculpatory clause itself provides that "the term 'Telephone Company' shall include any or all Telephone Companies involved in this transaction, the Selling Company, the Publishing Companies, or any representative of said company or companies." It is obvious that it would not have made any difference whether the plaintiff discussed the contracts with a representative of the Reuben H. Donnelley Corporation or L. M. Berry & Company; it was in any event doing business with the same entity, "the Telephone Company." To reach any other conclusion is to exclude from consideration the facts as they actually exist.

In order to invoke the protection of the exculpatory clause defendant should, at the least, be required to show some reasonable effort to perform its contractual obligations. To the contrary, so callous and indifferent was the conduct of the defendant here that it managed to omit plaintiff's listing in the Geneseo directory for two consecutive years, 1976 and 1977.

Justice would require, rather than enforcement of the exculpatory clause, that the plaintiff recover for actual damages for the one-year omission from the Freeport directory and exemplary damages for what appear to be the wilful omissions from the Geneseo directory.