JAMES CONCANNON, Indiv. and on behalf of all those similarly situated, Plaintiffs-Appellees, v. ILLINOIS BELL TELEPHONE COMPANY, Defendant-Appellant (Anthony N. Fratto, Comptroller of the City of Chicago, Intervening Plaintiff-Appellee).—MICHAEL JAMES FROST, Indiv. and on behalf of all those similarly situated, Plaintiffs-Appellants, v. THE CITY OF CHICAGO et al., Defendants-Appellees (Illinois Bell Telephone Company, Defendant-Appellant).

First District (1st Division)   Nos. 86—3119, 86—3120 cons.

Opinion filed November 16, 1987.

Michael J. McArdle, Chartered, of Chicago, for appellants Michael James Frost and class.

Illinois Bell Telephone Company, of Chicago (L. Bow Pritchett, Robert Guritz, and John T. Lenahan, of counsel), for appellant Illinois Bell Telephone Company.

Judson H. Miner, Corporation Counsel, of Chicago (Richard K. Means, Assistant Corporation Counsel, of counsel), for appellees City of Chicago and Anthony N. Fratto.

William J. Harte, Ltd., and Klafter & Burke, both of Chicago (William J. Harte, Jeffrey B. Whitt, and Edward M. Burke, of counsel), for appellees James Concannon and class.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

Appellants Illinois Bell Telephone Company (IBT) and a taxpayer class represented by Michael Frost (Frost) appeal from a decision of the circuit court of Cook County which held that the Chicago Messages Tax Ordinance (Municipal Code of Chicago, §132—30 *et seq.* (1984)) applied to revenue that IBT collected in relation to telephone directory advertising. IBT and the class represented by Frost contended that the City tax did not apply to telephone directory advertising. The appellees, City of Chicago (City), the City comptroller, Anthony Fratto (Fratto), and the class represented by James Concannon (Concannon), on the other hand, argued that the City messages tax did apply and that the revenue IBT derived from its contract with Reuben H. Donnelley Corporation (Donnelley) was taxable. Thus, the issue presented was one of statutory construction concerning whether the revenues IBT received from Donnelley pursuant to a contract, in which IBT provided assets and services to Donnelley to assist Donnelley in selling telephone directory advertising, was taxable under the Chicago Messages Tax Ordinance.

The City of Chicago Messages Tax Ordinance is an occupation tax imposed on the "Transmission of Messages by Electricity" and was enacted in December of 1955 pursuant to section 23—113 of the Mu-

nicipal Code (1955 Ill. Laws 1900, codified at Ill. Rev. Stat. 1957, ch. 24, par. 23—113; Municipal Code of Chicago §132—31 (1984)). This ordinance, known as the Messages Tax Ordinance, currently imposes a 5% tax upon the gross receipts of "all persons engaged in the business of transmitting messages by means of electricity." The ordinance defines "gross receipts" as "the consideration received for transmission of messages and for all services rendered in connection therewith." (Municipal Code of Chicago, §132—30 (1984).) The City, Fratto, and the Concannon class argue here, as they did in the trial court, that the contract between IBT and Donnelley by which IBT receives revenue from Donnelley's directory advertising in exchange for certain assets and services provided by IBT is "consideration received for a service rendered in connection with the transmission of messages."

The litigation here began in September 1981, when James Concannon filed a class action seeking injunctive and declaratory relief against IBT for monies that Concannon claimed were owed to the City under the Messages Tax Ordinance. Thereafter, IBT filed a petition for writ of *certiorari* in the circuit court of Cook County in December of 1981, seeking reversal of the City's current administrative interpretation that the Messages Tax Ordinance applied to revenue IBT derived from its contract with Donnelley. In conjunction with its request for a writ, IBT sought to have the circuit court set aside the City Comptroller's notice of tax corrections to IBT for its November 1975 to June 1979 tax returns, which imposed an additional tax of $42,237,136 based on the current administrative determination of the City. In September 1982, IBT additionally filed a declaratory judgment action of its own against the City and Fratto and requested a declaration that the Messages Tax Ordinance did not apply to the revenue from its contract with Donnelley and, further, requested that an escrow fund be established for the taxes it was protesting by the lawsuit. Also in September of 1982, Michael Frost filed an action against the City, Fratto, and IBT, on behalf of a taxpayer class, seeking an adjudication that the application of the Messages Tax Ordinance was improper and a refund of the protested messages taxes collected.

All four suits were consolidated by the trial court. Following the consolidation, the parties agreed to a comprehensive stipulation of facts and eventually also agreed to a partial settlement of the issues presented in the four lawsuits. The partial settlement agreement in fact resolved most of the claims in the consolidated action, including the claim for taxes for directory advertising revenue up to and including September 14, 1983. However, the agreement did not settle the

claim for taxes on interstate revenue[1] or the additional claim for taxes on directory advertising revenues prospectively, from September 15, 1983. These issues eventually proceeded to trial.

At trial the court rejected IBT's affirmative defenses and specifically found that the City was not estopped, as IBT had claimed, by the City comptroller's failure in the past to assess and collect taxes on advertising revenue. The trial court then held that the Messages Tax Ordinance was applicable to IBT's revenue from its directory advertising contracts, and further found that the so-called "Yellow Pages" that Donnelley published were "an essential instrumentality in connection with the peculiar service which *** [the] telephone company offer[ed] for the public benefit and convenience." Consequently, the trial court dismissed the Frost class complaint which had requested a judgment, as a matter of law, that the directory advertising revenues were not taxable to IBT; denied IBT's motion for summary judgment; granted judgment on the complaint to the Concannon class; and awarded the Concannon class costs and attorney fees.

IBT and the Frost class have now appealed to this court. The appellants, IBT and Frost, in their appeal contend that the assets and services which IBT supplies to Donnelley, namely, customer listings, billing and collection services, and incidental delivery services, were not rendered in connection with the transmission of messages, and, thus, any compensation it received for these services cannot be taxable under the Chicago Messages Tax Ordinance. They argue that the ordinance does not apply, as a matter of law, since IBT merely collects advertisement revenues, as an agent for Donnelley, and, later, obtains its directory advertisement revenues, pursuant to its contract with Donnelley, directly from Donnelley. However, the appellees, the City, Fratto, and Concannon, all argue that Donnelley's directory advertising is, in fact, part and parcel of IBT's customer services since the publication of directory advertising increases customer use of IBT telephonic services. Therefore, they submit, the revenues IBT obtains from Donnelley based on directory advertisement, whether paid directly or not, is taxable within the meaning of the ordinance. Additionally, the appellees assert that IBT's daily updates of its customer lists for the benefit of Donnelley, and its agreement to provide Donnelley directories to Donnelley's customers free of charge, further demonstrates that IBT's customer services and Donnelley's directory

---

[1] This claim was decided adversely to the plaintiff Concannon class on September 11, 1985, and affirmed by this court in *Concannon v. Illinois Bell Telephone Co.* (1986), 149 Ill. App. 3d 517, 501 N.E.2d 183.

advertising are inextricably intertwined. Hence, the appellees assert that the trial court was correct in its determination that Donnelley's directory advertising was taxable under the ordinance and its decision should be affirmed.

The issue, thus, before this court is whether the Chicago Messages Tax Ordinance includes within its terms IBT's revenue derived from Donnelley's telephone directory advertisement. The Messages Tax Ordinance defines a taxable event in terms of "transmission of messages," which includes, in relevant part, the following:

> "[The] furnishing, for a consideration, of services or facilities (whether owned or leased), or both, to persons in connection with the transmission of messages where such persons do not, in turn receive any consideration in connection therewith, but shall not include such furnishing of services or facilities for the transmission of messages to the extent that any such services or facilities for the transmission of messages are furnished for a consideration, by such persons, to other persons, for the transmission of messages." Municipal Code of Chicago, §132–30 (1984).

■ We begin our analysis by observing that, contrary to IBT's assertions, the Concannon class did have standing to bring this action even though they were not the taxpayers in the first instance in this case. As our supreme court in *Getto v. City of Chicago* (1979), 77 Ill. 2d 346, 396 N.E.2d 544, stated in addressing the same issue in a different setting: "[c]learly Bell's subscribers, who have fully borne the burden of the city's message tax, have 'a personal claim, status or right which is capable of being affected' [citation], and thus have standing to bring this action." (77 Ill. 2d at 355-56, 396 N.E.2d at 548.) Further, the plaintiff class here has been paying an additional charge on residential telephone service since IBT began remitting the messages tax under protest in 1983. Therefore, in our opinion, the Concannon class has a sufficient interest to support standing in this case and in this appeal.

■ Next addressing the primary issue in this case, whether the revenue IBT receives from Donnelley's directory advertising is a taxable event, we find it, as stated previously, to be an issue of statutory construction and further find that it is one that can be decided as a matter of law. In this regard, we note, as our supreme court stated in *Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 381 N.E.2d 222:

> " 'It is a primary rule in the interpretation and construction of statutes that the intention of the legislature should be ascertained and given effect. [Citations.] This is to be done primarily

from a consideration of the legislative language itself, which affords the best means of its exposition, and if the legislative intent can be ascertained therefrom it must prevail and will be given effect without resorting to other aids for construction. [Citations.] There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports.' (*Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350[, 167 N.E.2d 169, 174].)" 72 Ill. 2d at 194, 381 N.E.2d at 224.

■■ ■ We also note that in construing any tax provision, it is a long-established rule that such tax laws "are to be strictly construed and they are not to be extended beyond the clear import of the language used. If there is any doubt in their application they will be construed most strongly against the government and in favor of the taxpayer." (*Getto v. City of Chicago* (1979), 77 Ill. 2d 346, 359, 396 N.E.2d 544, 550; see *Oscar L. Paris Co. v. Lyons* (1956), 8 Ill. 2d 590, 598, 134 N.E.1d 755, 759.) Furthermore, while the administrative construction of a statute is given deference, such a construction does not bind a court if it is found to be erroneous as a matter of law. *Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 195, 381 N.E.2d 222, 224.

In the present case, the ordinance imposes a tax upon all persons "engaged in the business of transmitting messages by means of electricity" and imposes the tax on the "gross receipts" of such persons. Transmitting messages under the ordinance includes, in addition to the "popular meaning of person to person communication," the "furnishing of services or facilities to persons for the transmission of messages to the extent that any such services or facilities for the transmission of messages are furnished for a consideration." (Municipal Code of Chicago §132–30 (1984)). "Gross receipts" is "the consideration received for transmission of messages and for all services rendered in connection therewith." (Municipal Code of Chicago §132–30 (1984)). In this appeal, IBT points out that its assets and services are provided only to Donnelley and not to any telephone customer of IBT and that these services and assets are provided in connection with Donnelley's advertising business and not IBT's business of transmitting messages. Thus, IBT asserts the assets and services it provides or sells to Donnelley are not provided as a part of any sale of telephone service. Accordingly, it concludes that the revenue it receives from these directory advertising services, under these circumstances, are not taxable. We agree.

Both the appellants and the appellees cite *Illinois Power Co. v.*

*Mahin* (1978), 72 Ill. 2d 189, 381 N.E.2d 222, in support of their position. In *Illinois Power Co.*, our supreme court upheld a Department of Revenue determination and affirmed an appellate court's decision that "gross receipts" under the Public Utility Act and the State Gas Revenue Tax Act included payments received by a utility as advances for construction, contributions in aid of construction, and rentals for furnishing or renting equipment or appliances. The court found that these activities constituted consideration for services rendered in connection with the sale of gas and electricity. The supreme court in so holding stated:

> "The explicit language of the statutes provides that 'gross receipts means the consideration received,' not only for the gas or electricity furnished or sold, but also the consideration received 'for all services rendered in connection therewith.' The fact that a part of the consideration is received in the form of a contribution or an advance for purposes of construction does not render it any the less the consideration for the gas or electricity 'distributed, supplied, furnished or sold.' Similarly, the fact that a portion of the consideration is received in the form of rental payments for equipment or appliances used in the furnishing, distribution or consumption of the gas or electricity does not serve to alter its character as a portion of the consideration." 72 Ill. 2d at 194, 381 N.E.2d at 224.

We also find that the appellate court's opinion in *Illinois Power Co.* is helpful in making a determination of when payments are received as consideration for services rendered in connection with the sale of a regulated activity and, thus, taxable. The appellate court specifically construed the phrase "all services rendered in connection therewith" and ruled there that "the services must be connected with the sale, etc., of gas or electricity. Thus, when the utility installs extra facilities or leases appliances it does so, as we see it, in order to be able to distribute, supply, furnish and sell gas and electricity to a particular customer." (*Illinois Power Co. v. Mahin* (1977), 49 Ill. App. 3d 713, 716-17, 364 N.E.2d 597, 600, *aff'd* (1978), 72 Ill. 2d 189, 381 N.E.2d 222.) The appellate court then held, as the suprem court did later, that the tax under the Gas Revenue Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 467.16) and Public Utility Revenue Act (Ill. Rev. Stat. 1985, ch. 120, par. 468) was appropriately imposed on "gross receipts" connected with the sale of such gas or electricity. The court construed "gross receipts" in this context to mean

> "the consideration the utility gets from selling gas and electricity and for services connected with such selling. 'Connected'

means attached to or associated therewith. Clearly in the examples we have given for advances or contributions, the monies paid are attached to or associated with the distribution, supply, furnishing or sale of electricity or gas to the customer for his use or consumption and for which he makes payment. *Illinois Power Co. v. Mahin* (1977), 49 Ill. App. 3d 713, 718, 364 N.E.2d 597, 601.

■ Thus, we believe that the proper interpretation of the Messages Tax Ordinance here requires that any "services" provided be included as part of the telephone service to a particular customer, and that the customer pay IBT for providing that service. This is not what takes place under the contract involving directory advertising with Donnelley. Under the contract with Donnelley, monies are paid to IBT by Donnelley for directory advertising assistance, which monies are derived from advertising revenues paid to Donnelley by its advertising customers for advertising and not from monies the telephone customers of IBT pay for telephone services. Accordingly, we do not believe this revenue can fairly be said to be within the scope of the Messages Tax Ordinance.

The supreme court of Hawaii in *In re Tax Appeal of Hawaiian Telephone Co.* (1980), 62 Haw. 572, 608 P.2d 383, also considered the question of whether directory revenues were included under their public service company tax law, and we find its decision there persuasive here. The Hawaii Supreme Court, after reading the words of its statute according to their ordinary and customary meaning, stated it was "of the opinion that Hawaiian telephone's directory revenues can by no stretch of the imagination be characterized as 'income from the *** conveyance or transmission telephone *** messages, or the furnishing of facilities for the transmission of intelligence by electricity.' " 61 Haw. at 584, 608 P.2d at 391.

In rendering its decision, the Hawaii Supreme Court considered the cases of *District of Columbia v. Chesapeake & Potomac Telephone Co.* (D.C. Cir. 1950), 179 F.2d 814, and *Commonwealth v. Bell Telephone Co.* (1929), 12 Pa. D. & C. 617, cited by the appellees here, and found them distinguishable. The court there further considered *California Fireproof Storage Co. v. Brundige* (1926), 199 Cal. 185, 248 P. 669, indirectly relied upon by the appellees here, which had decided that telephone directory advertisement could be properly subjected to regulation by a public utility commission. The Hawaii Supreme Court found that the language of the utility tax statutes at issue in *Chesapeake & Potomac Telephone Co.* and *Bell Telephone Co.* were particularly comprehensive in scope and amenable by their own terms to

broad interpretation. Thus, the Hawaii court found the decisions in those cases distinguishable because the language in the Hawaii statute was more particular and limited. Additionally, the court found that the question involved in *California Fireproof Storage Co.* was only remotely related to the issue presented in *In re Hawaiian Telephone Co.*

We find the reasoning of the Hawaii Supreme Court in *In re Hawaiian Telephone Co.* convincing and agree that the *Chesapeake & Potomac Telephone Co.* and *Bell Telephone Co.* cases involved broader and more comprehensive tax statutes and thus are also distinguishable from our ordinance here. We find too, as the Hawaii court there found, that the other cases cited by the appellees involved essentially dissimilar issues, even though the cases cited did consider directory advertising and found it to be an activity related to the telephone business and properly subject to regulation under a public utility act. However, merely because directory advertisement may have some relationship to the business of transmitting messages and may be a proper subject of regulation does not mean that the activity is taxable under a message tax. As the Hawaii court observed in *In re Hawaiian Telephone Co.*:

> "Neither Taxpayer nor this court disputes that the publication and the distribution of telephone directories are necessary adjuncts to carrying on a telephone company business \*\*\* [or] that, \*\*\* the manner in which these activities are carried out should be subject to some degree of government regulation. Nevertheless, we believe that questions pertaining to the desirability and need to regulate public service companies, such as Hawaiian Telephone, and the various functions they perform within the scope of their respective public service business, exist wholly apart from the question of whether certain revenues derived by these companies should be subject to state taxation. Stated differently, it does not follow, absent specific statutory authority, that revenues earned by public service companies should be taxable \*\*\* merely because the activities from which they were generated are part of or incident to public service company business." *In re Hawaiian Telephone Co.,* 61 Haw. at 583-84, 608 P.2d at 391.

Furthermore, we believe it is important to note here, as did the court there, that while directory advertisement revenues of IBT may not be subject to the messages tax, those revenues are subjected to taxation, *i.e.,* as additional revenues earned by IBT, and are also considered by the Illinois Commerce Commission in setting telephone

rates for IBT's customers.

Moreover, we find *Illinois Bell Telephone Co. v. Miner* (1956), 11 Ill. App. 2d 44, 136 N.E.2d 1, cited by the appellees, to be distinguishable from the present case. In that case, the Second District Appellate Court said, for purposes of a motion to strike or dismiss, the complaint sufficiently alleged that the directories were provided to subscribers as an aid in the use of telephone services, and consequently, under those circumstances, the court there found that the directories were an essential element of the telephone service equipment provided by IBT. However, we concur with the observation of the appellants, IBT and Frost, in their argument here that neither *Miner* nor the cases it relied upon, *California Fireproof Storage Co. v. Brundige* (1926), 199 Cal. 185, 248 P. 669, and *McTighe v. New England Telephone & Telegraph Co.* (2nd Cir. 1954), 216 F.2d 26, explicitly addressed the issue of "Yellow Pages" directory advertisement, nor did those cases find or suggest that the "Yellow Pages" listings were an essential element of providing telephone services. Rather, what those cases found, at most, was that alphabetical name and address directories or the "white pages" listings were an essential or integral part of telephone services.

Here, the parties stipulated in their agreed statement of facts that IBT never published nor was it ever required to publish classified "Yellow Pages," directories that contained advertisements. In *Miner*, the court itself specifically noted that there were no allegations that any advertisements appeared in the directories at issue in that case and that such an issue was not before the court. (*Illinois Bell Telephone Co. v. Miner* (1956), 11 Ill. App. 2d 44, 62, 136 N.E.2d 1, 10.) Furthermore, the court in *California Fireproof Storage Co.* held that because of the telephone company's monopoly position, the Public Service Commission should assume jurisdiction over directory advertisement to prevent discrimination in the sale of advertisement. It did not, however, as the appellants point out, hold that directory advertisement was essentially connected with the activity of transmitting messages. Additionally, the court in *McTighe* expressly noted that classified advertisement is wholly a matter of private contract, not a part of the activity of transmitting messages, and, thus, properly distinguished it from the alphabetical directory, which was found to be part of such activity and within the jurisdiction of the Public Service Commission.

The relevant State enabling act here (Ill. Rev. Stat. 1955, ch. 24, par. 23—113) only granted the City of Chicago the authority to impose an occupation tax upon such telephone message services as was spe-

cifically authorized by the legislature in the act. (See *Concannon v. Illinois Bell Telephone Co.* (1986), 149 Ill. App. 3d 517, 524-25, 501 N.E.2d 183, 188.) Our supreme court held in *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 326 N.E.2d 737, that it would be "unauthorized by law" to impose a tax, such as the messages tax, if it is imposed on revenues outside the scope of the tax statute simply because the taxpayer conceded that other revenues were subject to the messages tax. As the court stated there, "even if a taxpayer has some revenue from the transmission of messages, the tax cannot be imposed on other revenues which have been received in consideration for business other than the transmission of messages or related services." (60 Ill. 2d at 361-62, 326 N.E.2d at 743.) Such is the case here; IBT's revenue from directory advertising is merely revenue derived from other business activity and not revenue from the transmission of messages or other related services.

There is a clear distinction between providing telephone service and selling or providing directory advertisement service. The primary function of advertising directories is to promote the listed businesses and to encourage collateral transactions with the customers of advertised and listed business and not to promote the use of telephone services. (Cf. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.* (1986), 149 Ill. App. 3d 53, 64, 501 N.E.2d 1280, 1288.) Furthermore, those who sell directory advertising are not merely agents of the telephone company, but are independent business entities, which do not have an undue advantage over those with whom they contract because of their relationship with the telephone company; our supreme court in so ruling found persuasive the fact that many decisions in other jurisdictions recognized that "Yellow Pages" advertisement is simply not a regulated telephone service activity. See *McClure Engineering Associates, Inc. v. Reuben H. Donnelley Corp.* (1983), 95 Ill. 2d 68, 73-74, 447 N.E.2d 400, 403.

In sum then, other courts and our supreme court itself (*McClure Engineering Associates, Inc. v. Reuben H. Donnelley Co.* (1983), 95 Ill. 2d 68, 447 N.E.2d 400) have noted an essential distinction between the "Yellow Pages" directories and white page or alphabetical directories and have found such directory advertisement in the "Yellow Pages" to be an independent nonregulated business activity separate from the business of transmitting telephone messages. Thus, we believe that directory advertisement is not subject to the messages tax without specific legislative language to that effect. Such a conclusion is also consistent with the prior history of the application of the ordinance by the City (until the present action of the City in 1979, the

City did not attempt to apply the messages tax to directory advertisement revenue) and is consistent with the application of the similarly worded State occupation tax by the Department of Revenue (Ill. Rev. Stat. 1945, ch. 120, par. 467.1) (*i.e.*, the State has also not attempted to apply its messages tax to directory advertising revenue).

Accordingly, we find that IBT's revenue from directory advertising is not included within the plain and ordinary meaning of the language of the Chicago Messages Tax Ordinance, nor, as stated above, is such an interpretation required by any historical application of the tax by the city or State. Furthermore, we find this construction of the ordinance is consistent with relevant authority from other jurisdictions (see *Classified Directory Subscribers Association v. Public Service Comm'n* (D.C. 1967), 383 F.2d 510; *Executive Services of Miami, Inc. v. Southern Bell Telephone & Telegraph Co.* (S.D. Fla. 1981), 514 F. Supp. 430; *Modern Equipment Corp. v. Puerto Rico Telephone Co.* (D. P.R. 1977), 440 F. Supp. 1242; see also *In re Application of Northwestern Bell Telephone Co.* (Minn. App. 1985), 367 N.W.2d 655).

For these reasons, we reverse the trial court's judgment in favor of the City of Chicago, Anthony Fratto, comptroller of the City of Chicago, and the class represented by Concannon which declared that the directory advertisement revenues IBT received from Donnelley were taxable under the Messages Tax Ordinance, ordered an accounting and awarded fees to the Concannon attorneys. We remand this consolidated cause to the circuit court of Cook County with directions to enter judgment in favor of appellants IBT and the plaintiff class represented by Frost and for entry of such other orders as are necessary and consistent with this opinion.

Judgment reversed and remanded with directions.

O'CONNOR and MANNING, JJ., concur.